RITA COLNAR, Plaintiff-Appellant, v. THE BALDKNOBBERS, INC., Defendant-Appellee.

First District (2nd Division)    No. 81-1166

Opinion filed June 1, 1982.

Susan E. Loggans & Associates, of Chicago (Susan E. Loggans and Margaret M. O'Leary, of counsel), for appellant.

Quinn and Broderick, of Chicago (Thomas C. Broderick, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Rita Colnar, an Illinois resident, sued defendant, The Bald-knobbers, Inc., a Missouri corporation, seeking recovery for injuries allegedly sustained on the premises of defendant's theatre in Branson, Missouri. The trial court dismissed the complaint and quashed service of summons for lack of jurisdiction over defendant. Plaintiff appeals, raising as issues whether the trial court: erred in its consideration of plaintiff's affidavit; used the correct standard in weighing the affidavits before it; and erred in quashing service of summons for lack of jurisdiction over defendant.

Plaintiff complained that on October 25, 1977, she was injured when she fell upon rocks, debris, and other obstructions while walking on defendant's premises in Branson, Missouri. Defendant, served in Missouri, filed a special appearance and moved to quash for want of jurisdiction. Attached to the motion was an affidavit by Lyle Mabe, president of defendant corporation. Following discovery limited to the issue of jurisdiction, plaintiff responded to defendant's motion and attached the depositions of Lyle Mabe and Max Tate, the latter being defendant's stage

manager. In response to plaintiff's request, defendant produced contracts between defendant and Illinois organizations relating to performances apparently consummated in 1979 and 1980. The affidavits, depositions and contracts reveal the following facts.

Defendant is engaged in the business of producing and performing country and hillbilly music, and comedy shows comprised of local talent. Defendant owns no real or personal property and maintains no offices in Illinois. It is not registered to do business in Illinois. Tourists visit Branson to listen to country and folk music, of which defendant is one local attraction. Visitors sometimes arrange for defendant to perform in their hometowns, some of which are out-of-State. Defendant visits Illinois two to five times a year to perform a 2-hour show, usually at fraternal organizations and schools. Contracts to perform are sent to the organizations in Illinois, which return them signed to Missouri. Posters and advertising materials are sent to Illinois only upon the request of the contracting organization and only after a contract is signed. During the performance, souvenirs are sold, such as books and records, which are produced locally. Defendant advertises locally only and, although it has contributed to the Ozark Marketing Council in recent years, whose purpose it is to attract tourists to Branson, there is no evidence such contributions were made the year plaintiff was injured. Formerly, defendant employed a booking agent, Bill Insley; however, the extent of his duties is unclear from deposition testimony and Insley himself was not deposed.

Also attached to plaintiff's response was plaintiff's affidavit, alleging that, "while still located in Illinois [she] heard of the Baldknobbers performances and had read literature describing their performances * * *. The things [she] heard about them and the literature is what attracted [her] to see them in Branson, Missouri, on the date of the accident."

Plaintiff initially argues that the trial court erred in finding her affidavit lacked credibility and was insufficient under Supreme Court Rule 191 (73 Ill. 2d R. 191). During the hearing on defendant's motion, the trial court stated in passing, "By the way this affidavit is dated December 23, 1980, approximately six months after the depositions of Tate and Mabe." This was the only trial court reference to the date; it did not state that the affidavit lacked credibility because of its date. The trial court further observed that, as plaintiff never set forth in her affidavit from what source she had heard of the Baldknobbers' performances, "[t]his does not really appear to be an affidavit that would truly comply with Supreme Court Rule 191 so far as setting forth all the facts that would be within the personal knowledge of the * * * [affiant]." The affidavit was not stricken, however, for noncompliance with Rule 191.

■■ Plaintiff next contends that the trial court incorrectly weighed the affidavits submitted by the parties. She alleges that all uncontroverted

affidavit facts must be taken as true, citing *Doolin v. K-S Telegage Co.* (1979), 75 Ill. App. 3d 25, 393 N.E.2d 556, which holds that facts alleged by plaintiff must be taken as true only if defendant's affidavit fails to negate those facts. She avers that the trial court here disregarded uncontroverted facts alleged by plaintiff. As previously noted, plaintiff's affidavit fails to set forth what literature she read, *e.g.*, newspaper accounts of the performance, vis-a-vis promotional handbills distributed by defendant. Nor does she disclose the source of what she heard, which would have enabled the trial court to assess what jurisdictional activities, if any, were initiated, maintained or pursued by defendant. As it consisted of mere conclusions without supporting facts (see *Amelco Electric Co. v. Arcole Midwest Corp.* (1976), 40 Ill. App. 3d 118, 123-24, 351 N.E.2d 349), plaintiff's affidavit gave little, if any, support to her position; the trial court gave it apt consideration.

Plaintiff maintains the circuit court of Cook County obtained personal jurisdiction over defendant under either the "doing business" doctrine or under sections 17(1)(a) and (3) of the Illinois "long-arm" statute (Ill. Rev. Stat. 1979, ch. 110, pars. 17(1)(a), 17(3)). (See *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847 (hereinafter "*Cook Associates, Inc.*"); *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 367 N.E.2d 118, *aff'd* (1978), 72 Ill. 2d 548.) Under either standard, due process requires that a State may assert *in personam* jurisdiction over a foreign corporation only where that corporation has maintained minimum contacts with the forum (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158), although the Illinois Supreme Court has recently re-examined the parameters of Illinois jurisdiction over nonresident defendants and concluded that "this due process standard represents only the outer limits beyond which a State may not go to acquire jurisdiction over nonresidents [and] * * * the boundaries or limits under our statute are not to be equated with the 'minimum contacts' test under the due process clause." (*Cook Associates, Inc.*, 87 Ill. 2d 190, 197.) We examine first plaintiff's "doing business" contentions.

■■■ Plaintiff argues that reasonable inferences can be drawn from the evidence which demonstrate: defendant employed a promoter to develop business here; defendant distributed posters and sold souvenirs and records here; defendant distributed advertising posters here; and, according to deposition testimony, defendant earned only enough to cover salaries on the road so that it intended to promote business as it performed during its visits to Illinois. As restated in *Cook Associates, Inc.*, the hallmark of "doing business" in Illinois is that a foreign corporation is conducting business here if it is "of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction

and laws * * *" of Illinois. (*Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104, 124 N.E. 355, *appeal dismissed* (1920), 253 U.S. 499, 64 L. Ed. 1032, 40 S. Ct. 483, quoted with approval in *Cook Associates, Inc.*, 87 Ill. 2d 190, 201.) For jurisdictional purposes, "doing business" is a corporation's operating within the State "not occasionally or casually, but with a fair measure of permanence and continuity," a standard enunciated by Mr. Justice Cardozo in *Tauza v. Susquehanna Coal Co.* (1917), 220 N.Y. 259, 267, 115 N.E. 915, 917, and quoted with approval in *Cook Associates, Inc.*, 87 Ill. 2d 190, 202-03. A corporation is then amenable to process in Illinois even for causes of action not arising from its transaction of business in the State. From the foregoing, it cannot be said that defendant was "doing business" in Illinois on the basis of its two to five performances in Illinois per year, as to justify *in personam* jurisdiction.

In *Cook Associates, Inc.*, plaintiff claimed Lexington United was doing business in Illinois through exhibiting at three trade shows in Chicago, in each of which Lexington received less than $50,000 in orders. Lexington obviously came to Chicago in order to promote its business and make its sales, as did defendant here, as adjunctive activities. Lexington did not fall within the "doing business" standard. (87 Ill. 2d 190, 203.) Although plaintiff at bar urges that defendant has been coming into Illinois for 21 years, the record reflects only that The Baldknobbers have been performing for 21 years, but not where. Plaintiff observes that, of the three shows attended by Lexington in *Cook Associates, Inc.*, two were in the same year, whereas in the instant case, defendant has been coming into Illinois two to five times per year. We find this distinction between *Cook Associates, Inc.* and the case at bar unpersuasive: defendant's visits must be characterized as occasional and sporadic.

Cases cited by plaintiff reveal that defendant foreign corporations were found amenable to process because of the extensiveness of their activities in Illinois, absent at bar. Our supreme court determined that Illinois jurisdiction existed in *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, upon certain facts which revealed that: Beech had an independent dealer in Illinois who agreed to perform warranty work here on all Beech products; Beech was empowered to inspect that business and its records here; Beech maintained listings in Chicago metropolitan area telephone directories; Beech's marketing manager frequently visited Illinois to promote its aircraft sales; and Beech sponsored sales programs in Illinois. In *Perkins v. Benguet Consolidated Mining Co.* (1952), 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413, defendant corporation's president maintained an office, employed personnel, hired a stock transfer agent, possessed bank accounts and conducted board of directors meetings in the forum State. In *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d

393, 389 N.E.2d 155, defendant tire manufacturer's products entered Illinois at the rate as high as 6,000 tires per year for the years 1968 through 1971 and the tire involved in the accident was purchased in Illinois. In *Quaker Oats Co. v. Chelsea Industries, Inc.* (N.D. Ill. 1980), 496 F. Supp. 85, the court found that the Irish Dairy Board, a defendant, was continuously and systematically doing business within the State of Illinois through its sale of 4,136,000 metric tons of chocolate crumbs and 30 metric tons of casein which entered Illinois, and found that another defendant, North Kerry Milk Products, Limited, did business in Illinois because of its sale of 2,601 long tons of casein in the State. No activities similar to those in the foregoing cases have been undertaken by defendant in Illinois in the present case.

■■ Nor is defendant subject to process under the long-arm statute (Ill. Rev. Stat. 1979, ch. 110, pars. 17(1)(a) and 17(3)). Plaintiff's cause of action did not lie in the wake of defendant's transaction of business within Illinois. (*First National Bank v. Screen Gems, Inc.* (1976), 40 Ill. App. 3d 427, 434, 352 N.E.2d 285.) "Where the jurisdictional activities consist of the solicitation of sales, a cause of action arising from the consequences of such a sale comes within the statutory definition of section 17(3)." (*Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 373, 370 N.E.2d 1106.) Plaintiff, again arguing that defendant's two to five performances in Illinois were promotional in nature, urges that she responded to these promotional activities by attending defendant's performance in Missouri, where she was injured. This contention is not supported in the record. That plaintiff "heard about defendant" in Illinois, and "read literature describing its performances," which induced her to see defendant perform in Missouri, are allegations too vague to allow the court to conclude that plaintiff's trip to Missouri was the result of defendant's activities in Illinois. *Cf. Clements v. Barney's Sporting Goods Store* (1980), 84 Ill. App. 3d 600, 406 N.E.2d 43.

For the reasons above stated, the judgment of the circuit court is affirmed.

DOWNING and PERLIN, JJ., concur.