**WELLES PRODUCTS CORPORATION,
a Nevada corporation, Plaintiff,**

v.

**PLAD EQUIPMENT CO., LTD., a Canadian corporation; and Southern Industrial Steel Co., a Georgia corporation, Defendants.**

No. 82 C 20091.

United States District Court,
N.D. Illinois, W.D.

April 12, 1983.

Robert Coplan, Connolly, Oliver, Goddard, Coplan & Close, Rockford, Ill., Stacker, Ravich & Simon, Minneapolis, Minn., for plaintiff.

David R. Herzog, Ronald N. Mora, Layfer, Cohen, Handelsman & Mora, Chicago, Ill., Brent A. Swanson, Homstrom & Green,

Rockford, Ill., Robert H. Cleveland, Downey, Cleveland, Moore & Parker, Marietta, Ga., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Plaintiff, Welles Products Corp. ("Welles"), a Nevada corporation with its principal offices and factory in Illinois, filed this diversity action against Plad Equipment Co., Ltd. ("Plad"), a Canadian corporation with its principal place of business in Quebec.[1] The dispute arose over an alleged contract between Welles and Plad under which Welles was to supply various components for a sewage treatment facility in Saudi Arabia. Plad moved to dismiss for lack of *in personam* jurisdiction. In his Report and Recommendation, the Magistrate recommended denial of the motion. Plad has filed timely objections, and Welles has filed a response to those objections. The court adopts the Report and Recommendation with the following additional comments.

The pertinent facts, as presented by the complaint, motion, briefs and affidavits submitted by Plad and Welles, are for the most part undisputed. Both parties agree that Plad was under contract to supply parts for two sewage treatment plants in Saudi Arabia. With regard to Plad's purchase of components for these projects from Welles, the initial contact between the parties was a telephone call in February or March 1981 from Jean Claude Frigeau, a Plad employee, to Carl Jacobs of Welles. Plad argues that there were contacts between the parties prior to this call and that a contract was formed only after negotiations subsequent to the call. It is, however, undisputed that this call was the genesis of the contract in question.

Additionally, Welles makes other factual allegations which are not denied or countered by Plad. Most notably, Welles alleges that in May 1982, Frigeau traveled to Welles' plant in Illinois and spent two days

---

1. Defendant Southern Industrial Steel Co. is not a party to the instant motion.

there overseeing and inspecting the design and production of the ordered components. Welles also alleges that the plans and specifications for the parts to be produced, as well as the purchase orders for these parts, were mailed by Plad to Welles' Illinois office. Finally, Plad is said to have made numerous telephone calls to Welles' offices and all payments from Plad to Welles were sent there.

■ When considering a challenge to its jurisdiction, a court may receive and weigh affidavits. The party asserting jurisdiction must make a prima facie showing that the applicable state long arm statute confers jurisdiction. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971). Once this has been shown, the court's determination must be made by viewing as true the facts alleged by the party asserting jurisdiction. *Id.* For purposes of this motion, therefore, the court will accept the above facts as true.

■ In the instant case, the Illinois Long-Arm Statute establishes the guidelines for determining whether personal jurisdiction exists. That statute provides in part:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business in this State. . . .

Ill.Rev.Stat. ch. 110, § 2–209(a)(1).[2] Personal jurisdiction is allowed in this diversity action only to the extent available to Illinois courts under this statute. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596, 598 (7th Cir. 1979). It is therefore necessary to look to Illinois law in determining whether Welles

has established a prima facie showing of personal jurisdiction.

■ Until the Illinois Supreme Court's recent decision in *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), section 2–209 was interpreted as coextensive with the due process requirements of the Fourteenth Amendment. *See Braband v. Beech Aircraft Corp.,* 72 Ill.2d 548, 557, 21 Ill.Dec. 888, 892, 382 N.E.2d 252, 256 (1978); *Nelson v. Miller,* 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957). In *Green,* the Illinois Supreme Court determined that section 2–209 "should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible." *Green, supra,* 86 Ill.2d at 436, 56 Ill.Dec. at 660, 427 N.E.2d at 1206. In determining long-arm jurisdiction, the courts must first look to the meaning of the applicable portion of the Illinois statute. Only in those situations where Illinois law provides jurisdiction are the courts to take the second step and assure that the minimum requirements of due process are met. *Green, supra,* 86 Ill.2d at 436–37, 56 Ill.Dec. at 660, 427 N.E.2d at 1206. While *Green* involved a tort case, this same approach was soon adopted for the "transaction of business" section of Illinois' Long Arm Statute applicable in the instant case. *Cook Assoc., Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981).

■ While the *Green* and *Cook* cases indicated that the long arm statute should not thereafter be interpreted as coextensive with new interpretations of the due process clause, those cases did not purport to overrule any past decisions in which particular sets of contacts were found to constitute, or not to constitute, the transactions of business.[3]

---

**2.** Formerly Ill.Rev.Stat. ch. 110, § 17.

**3.** In *Green,* the Illinois Supreme Court said: "In *Nelson v. Miller,* (1957), 11 Ill.2d 378, 389 [143 N.E.2d 673], this court said that the

Illinois long-arm statute reflects a conscious purpose to assert jurisdiction over nonresidents to the extent permitted by the due process clause. We do not, however, regard this observation as the equivalent of declar-

In circumstances similar to the case at bar, courts in this district have found that a defendant had transacted business within the meaning of the Long Arm Statute. *Tatham-Laird & Kudner, Inc. v. Johnny's American Inn,* 383 F.Supp. 28 (N.D.Ill. 1974), involved a service contract between a Nebraska buyer and an Illinois seller. In determining that the buyer had transacted business in Illinois, that Court stated:

> the defendant voluntarily and affirmatively sought the plaintiff's services in Illinois, it traveled into Illinois for contract negotiations, and thereafter met in Illinois in furtherance of the contractual relationship. It also placed numerous phone calls to plaintiff's Chicago office and paid for certain services by mailing its checks to Chicago.

*Tatham, supra,* 383 F.Supp. at 31. So too in this case, the defendant Plad's nearly identical contacts with Welles in Illinois mandate the conclusion that Plad transacted business here.[4]

Having determined that Plad's activities place it within the scope of the Illinois Long-Arm Statute, this court must consider whether asserting *in personam* jurisdiction here would violate established principles of due process. In *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court stated that due process is satisfied when a defendant has "certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158 (citations omitted). It is essential that there be some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). *See also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In the instant case, Welles has alleged sufficient contacts between Illinois and Plad so that it is not unjust to require Plad to defend this suit here. The initial call from Frigeau, as well as Frigeau's visit to Illinois, suggest that Plad purposefully availed itself of the privilege of conducting business here. Plad made all payments under the contract to Welles' Illinois office. Surely they must have contemplated the effects in Illinois of a failure to make these payments. *Hampton, supra,* 437 F.2d at 1177. Jurisdiction is therefore proper in the Northern District of Illinois as to defendant Plad.[5]

In opposition to *in personam* jurisdiction, Plad places great weight on the fact that the contract was silent as to place of performance. Plad cites *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir.1979), for the proposition that since the contract left Welles in absolute control over where to perform its contractual obligations, the fact that Welles chose to perform in Illinois does not constitute an invocation by Plad of the benefits and protections of Illinois law. The court in *Lakeside* drew this from *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1239–1240, where the Supreme Court stated:

---

ing that the construction and application of section 17(1)(b) depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction." 56 Ill.Dec. at 660, 427 N.E.2d at 1206.

From this statement it appears that the Illinois Supreme Court did not intend to overrule *Nelson,* but viewed *Green* as consistent with it. Hence, there is no reason to expect that they intended to overrule past decisions which may have been based on *Nelson* and then prevailing standards for due process.

**4.** *See also Kropp Forge Co. v. Jawitz,* 37 Ill. App.2d 475, 186 N.E.2d 76, 79 (1st Dist.1962), where the Court held that jurisdiction under the "transaction of business" portion of Illinois' statute was proper by reason of "either making the alleged contract itself, or the activity in furtherance of it, while defendant was physically present in Illinois."

**5.** Our conclusion that Welles has prima facie established *in personam* jurisdiction under the long arm statute does not relieve Welles from proving these jurisdictional facts at trial. *Hampton, supra,* 437 F.2d at 1177 n. 2.

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendants activity....

*Lakeside, supra,* 597 F.2d at 600. The plaintiff's performance in Wisconsin was held to be "unilateral activity" in *Lakeside* insufficient to establish jurisdiction.

 However, when the end of the quote from *Hanson* is also considered, the inapplicability of *Lakeside* becomes apparent. The Court in *Hanson* continued:

> it is essential in each case that there be *some act* by which the defendant *purposefully avails itself* of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Lakeside, supra,* 597 F.2d at 660 (quoting *Hanson*) (citations omitted) (emphasis added). In *Lakeside,* there was no act by which the defendant "purposefully availed" itself upon Wisconsin. The defendant in that case had never sent any officer, agent or employee to Wisconsin; the initial contact between the parties concerning the contract in controversy was a visit by the plaintiff to the defendant's offices in West Virginia. Plad, by contract, purposefully availed itself of Illinois' benefits and protections by initiating the contract negotiations and by sending one of its employees to Illinois to oversee and inspect the design and production of the ordered components. These acts by Plad in Illinois, together with the other contacts mentioned previously, demonstrate that there was more than the "unilateral activity" of a plaintiff in the forum state.

Plad's reliance on *U.S. Reduction Co. v. Amalgamet, Inc.,* 545 F.Supp. 401 (N.D.Ill. 1982) is also misplaced. The facts of *U.S. Reduction* are dissimilar to those of the instant case:

> No representative of [the defendant] traveled to Illinois to negotiate the contract... Inspection of the subject matter of the contract as well as plaintiff's performance under the contract took place in Alabama.

*U.S. Reduction, supra,* 545 F.Supp. at 402. As shown above, Plad's Illinois activities and contacts are markedly different in the case at bar.

For the reasons set forth above, Plad has transacted business within the meaning of Illinois' Long Arm Statute. Additionally, asserting jurisdiction over Plad in this case does not violate the minimum contacts requirements of due process. For these reasons, *in personam* jurisdiction over the defendant Plad is proper in this district and Plad's motion is therefore denied.