JACOBS/KAHAN & COMPANY,
Plaintiff-Appellant,

v.

Richard M. MARSH and Frances M. Marsh, Defendants-Appellees.

No. 83–1937.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1983.

Decided Aug. 6, 1984.

Paul A. Gold, Paul A. Gold, Ltd., Chicago, Ill., for plaintiff-appellant.

Barry L. Kroll, Jacobs, Williams & Montgomery, Ltd., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, ESCHBACH and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff, Jacobs/Kahan & Company, brought this diversity action against defendants, Richard and Frances Marsh, to recover payment for services rendered. Plaintiff is a Delaware corporation with its principal place of business in Illinois. Defendants are citizens of California. The district court granted defendants' motion to dismiss for lack of personal jurisdiction, and plaintiff appeals. We reverse.

## I

On October 6, 1980, defendants contracted for plaintiff's services in obtaining a commitment from K-Mart Corporation, which is located in Troy, Michigan, for a store lease in a proposed shopping center on property owned by defendants in Indio, California. Specifically, the agreement provided that plaintiff would receive $250,-000 from defendants upon obtaining a mutually satisfactory triple-net lease on K-Mart Corporation's form and that plaintiff would pay all expenses incurred in obtaining the lease. The contract expired by its terms after 90 days, but was extended in writing to February 28, 1981. On February 13, 1981, plaintiff secured a letter of commitment from K-Mart and, on February 26, sent to defendants a standard K-Mart Corporation triple-net lease for a store in the proposed Indio shopping center. However, defendants refused to go forward on the lease and did not pay plaintiff. In the

latter half of 1981, defendants allegedly asked plaintiff to restructure the deal with K-Mart as a ground lease rather than a triple-net lease. Plaintiff again entered into negotiations with K-Mart's representatives and incurred substantial expense providing K-Mart with market data, aerial photographs, maps, market research, and architectural and engineering workups for the proposed site. In early 1982, K-Mart and defendants entered into a 27-year ground lease. Defendants refused to pay plaintiff, and this suit followed. Plaintiff claims that it performed under both the original contract and the subsequent oral agreement to restructure and seeks payment of its $250,000 fee plus costs and attorneys fees. In addition, plaintiff claims that defendants never intended to pay plaintiff and seeks $1,000,000 in punitive damages.

Defendants moved to dismiss for lack of personal jurisdiction over them, and plaintiff and defendants both submitted affidavits. Resolving all conflicts in the affidavits in favor of plaintiff, *Neiman v. Rudolf Wolff & Company*, 619 F.2d 1189, 1190 (7th Cir.), *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980), the relevant facts are as follows. The original contract was executed by defendants and plaintiff's manager, Thomas Niemira, at a meeting in plaintiff's offices in Chicago, Illinois on October 6, 1980. Defendants had requested to come to Chicago to meet plaintiff's principals and examine plaintiff's operation, and plaintiff invited them to do so. Prior to the Chicago meeting, the terms of the contract had been partially negotiated through an exchange of correspondence and telephone calls and at a meeting between Niemira and defendants

in defendants' home in Palm Desert, California.[1] Also prior to the Chicago meeting, defendants had been sent a proposed contract. At the Chicago meeting, the proposed contract was discussed, and defendants requested significant changes that resulted in the addition of two typed paragraphs and a handwritten clause. (The final contract consisted of eight paragraphs.) Defendants and Niemira then signed the contract. The letter extending the performance date was signed by defendants in California and sent to Chicago, and defendants' alleged request for plaintiff to restructure the K-Mart deal as a ground lease was made by telephone.

## II

A federal district court in Illinois has personal jurisdiction over a party in a diversity case only if an Illinois court would have such jurisdiction. Rule 4(e), Fed.R. Civ.Pro. The Illinois "long-arm" statute, Ill.Ann.Stat. ch. 110, § 2–209 (1983), authorizes jurisdiction over non-resident defendants "as to any cause of action arising from the doing of any" of certain enumerated acts, including "the transaction of any business" in Illinois.[2] In addition, the exercise of long-arm jurisdiction must be consistent with due process. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957), the Illinois Supreme Court determined that § 2–209 reflects "a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause." 143 N.E.2d at 679. As a consequence, jurisdictional analysis under the statute has until recently focused almost exclusively on

---

**1.** The record is silent as to whether the contractual relationship in issue was initiated by plaintiff, defendants, or a third party.

**2.** Section 2–209 provides in relevant part:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts

of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State; ...

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section. Until July 1, 1982 this section was codified as Ill.Rev.Stat. ch. 110 § 17.

tests developed for interpreting the requirements of due process. However, the Illinois Supreme Court disapproved this practice in *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), stating that its observation in *Nelson v. Miller* was not

"the equivalent of declaring that the construction and application of section [2–209] depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction. Neither do we read *Nelson* to say that in applying section [2–209] we should not construe the meaning and intent of our own statute irrespective of the due process limitations generally applicable to state long-arm statutes. A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible."

56 Ill.Dec. at 661–62, 427 N.E.2d at 1207–08. *See also Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 57 Ill. Dec. 730, 733, 429 N.E.2d 847, 850 (1981).

■ Although the Illinois Supreme Court did not in *Green* overrule either *Nelson* or any past decisions reached under *Nelson* by application of due process tests, it clearly mandated a new approach to Illinois long-arm jurisdiction that inquires separately whether jurisdiction is statutorily conferred and whether the exercise of jurisdiction is constitutional. *Deluxe Ice Cream Company v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213 (7th Cir.1984). *See generally, Welles Products Corp. v. Plad Equipment Co.*, 563 F.Supp. 446, 448 (N.D. Ill.1983); *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391, 397–99 (N.D.Ill.1982). Fully broken down, the requisite analysis consists of three questions: (1) whether the defendant engaged in one of the jurisdictional acts enumerated in the statute (in this case, "the transaction of any business"); (2) whether the cause of action is one "arising from" the jurisdictional act; and (3) whether the exercise of long-arm jurisdiction is consistent with due process as defined by prevailing constitutional standards.

### III

#### A

We have no difficulty concluding that defendants' partial negotiation and execution of a contract while they were physically present in Illinois is "the transaction of any business" in Illinois. *See Snyder v. Smith*, 736 F.2d 409, 416 (7th Cir.1984); *Deluxe Ice Cream*, 726 F.2d at 1216; *In re Oil Spill by Amoco Cadiz*, 699 F.2d 909 (7th Cir.1983); *Consolidated Laboratories, Inc. v. Shandon Scientific Co.*, 384 F.2d 797, 801 (7th Cir.1967); *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391, 396 (N.D.Ill. 1982) ("At the meeting details of the transaction were laid out and legally binding contract changes were made. If this is not the transaction of business in Illinois, it is difficult to know what is.").

■ Defendants argue that they cannot be found to have transacted business in Illinois because performance of the contract was centered in California.[3] This argument fails for two reasons. First, while contract performance in Illinois has of itself been held a sufficient basis for jurisdiction, *see, e.g., Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill. App.3d 965, 304 N.E.2d 27 (1973), it is plainly not necessary for defendant to have performed in Illinois in order to have transacted business in Illinois, *see, e.g., Ronco, Inc.*, 539 F.Supp. at 395. Second, contract performance was not, as defendants assert, centered in California. While it is true that plaintiff took photographs and collected

---

**3.** The district court accepted this argument and therefore never reached the "arising under" or due process issues. It is apparent, however, that the district court was misled by defendants' repeated, but erroneous, assertions that the subject matter of the parties' contractual relationship was the property in Indio, California. In fact, the contract underlying this suit is for professional services by an Illinois corporation to obtain a lease commitment from a Michigan corporation, and the location of defendants' property is entirely incidental to the dispute.

data in California, the project was coordinated and supervised by plaintiff's personnel in Illinois. Moreover, plaintiff's performance obligation under the contract was to negotiate and obtain a lease commitment from K-Mart, and those negotiations were conducted between plaintiff in Illinois and K-Mart in Michigan. Finally, defendants' sole obligation under the contract was to pay plaintiff, and there is nothing to suggest that payment was to be made anywhere other than to plaintiff's office in Illinois. Thus, the contract was to be performed substantially, if not primarily, in Illinois. We further note that an Illinois court would almost certainly hold that the contract is governed by Illinois law. *See D.P. Service, Inc. v. A.M. International,* 508 F.Supp. 162, 164 (N.D.Ill.1981) (stating that if contract is to be performed in more than one state, Illinois applies the law of the place of execution); *Ehrman v. Cook Electric Co.,* 468 F.Supp. 98, 99 (N.D.Ill. 1979).[4]

### B

Defendants' principal contention is that plaintiff's cause of action does not "arise from" the Illinois transaction as required by section 2–209 because the written contract between the parties called for a triple-net lease, not a ground lease, and expired prior to the execution of the ground lease by defendants and K-Mart. This argument must also be rejected.

■ Section 2–209 requires only that the cause of action "lie in the wake" of the

transaction of business. *Snyder,* at 416; *Deluxe Ice Cream,* 726 F.2d at 1215; *Amoco Cadiz,* 699 F.2d at 915; *Loggans v. Jewish Community Center,* 113 Ill.App.3d 549, 69 Ill.Dec. 484, 490, 447 N.E.2d 919, 925 (1983); *Colnar v. Baldknobbers, Inc.,* 107 Ill.App.3d 234, 63 Ill.Dec. 69, 72, 437 N.E.2d 718, 721 (Ill.App.Ct.1982). In *Amoco Cadiz,* for example, we found that a quasi-contractual indemnity action over damages caused by an oil spill in Europe satisfied the "arising from" requirement where the contract to build the offending ship had been negotiated in Illinois. 699 F.2d at 915. Similarly, in *Deluxe Ice Cream* we held that plaintiff's breach of warranty action against a non-resident seller lay in the wake of an agency contract between the seller's representative and the manufacturer, which contract had been partially negotiated in Illinois. 726 F.2d at 1215–16.

■ Here the relationship between the cause of action and the transaction of business in Illinois is stronger than in either *Amoco Cadiz* or *Deluxe Ice Cream.* Plaintiff has alleged that it contracted with defendants to procure a triple-net lease; that it procured the lease; that defendants refused to go forward and orally requested plaintiff to restructure the deal as a ground lease; and that plaintiff successfully secured a ground lease. Now plaintiff is suing to be paid for its services, and we do not think it can seriously be argued that their claim does not "lie in the wake" of the original agreement.[5]

---

**4.** Defendants also argue that because the negotiations in Illinois were not extensive and because they made only a single trip to Illinois, their contacts were insufficient to constitute the transaction of business in Illinois. It is well settled, however, that a single act can be sufficient. *Snyder,* at 416; *Illinois National Bank & Trust Co. v. Gulf States Energy Corp.,* 102 Ill. App.3d 1113, 57 Ill.Dec. 938, 943, 429 N.E.2d 1301, 1306 (Ill.App.Ct.1982); *Johnston v. United Presbyterian Church,* 103 Ill.App.3d 869, 59 Ill. Dec. 518, 522, 431 N.E.2d 1275, 1279 (1981).

**5.** Defendants are mistaken in relying on *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981). In that case, plaintiff, an Illinois employment

agency, brought a suit for fees against defendant, a non-resident employer, after defendant hired a person whom plaintiff had once referred to defendant. The prospective employee had been interviewed by defendant in Chicago and offered a job, which he turned down. After a subsequent referral to defendant by a different employment agency, the same prospective employee was offered a different job, which he accepted. The court concluded that the hiring in issue did not "arise from" the Chicago interview. The present case is distinguishable because the ground lease here was allegedly obtained as the result of an ongoing contractual relationship under which plaintiff claims it twice performed. *Cf. NTN Bearing Corp. v.*

C

Defendants make no argument in their brief that Illinois cannot constitutionally assert long-arm jurisdiction over them, stating instead that we need not reach the issue and thereby apparently conceding it. At oral argument, however, counsel stated that defendants rest their case against jurisdiction primarily on *Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir.1979), which is a due process case.[6]

■■■■ Due process requires only that the non-resident defendant have "certain minimum contacts" with the forum state, *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, and this requirement is satisfied if there is "some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State." *Snyder*, at 415 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Where, as here, the dispute is said to "arise from" the jurisdictional act or acts, the " 'relationship among the defendant, the forum state and the litigation' is the essential foundation" of personal jurisdiction, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, —— U.S. ——, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)), and must be such that it is reasonable to subject defendant to suit in the forum state. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292–93, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490

(1980). See *Snyder*, at 415; *Deluxe Ice Cream*, 726 F.2d at 1213.

■■■■ In *Lakeside*, on which defendants rely, a Wisconsin corporation sued a West Virginia corporation in Wisconsin to recover payment under a contract for the sale of goods shipped to Virginia. This court held that the defendant did not by ordering goods with the knowledge that they would likely be manufactured in and shipped from Wisconsin "purposefully avail itself of the privilege of conducting activities" within Wisconsin because plaintiff was not required to perform in Wisconsin and retained absolute control under the contract over where its activities where its activities would be conducted. The present case is readily distinguishable because defendants did purposefully avail themselves of the privilege of conducting activities in Illinois by voluntarily travelling to Illinois to transact business. *See Snyder*, at 416–17; *Deluxe Ice Cream*, 726 F.2d at 1213, 1216; *Wisconsin Electrical Mfg. Co. v. Pennant Products, Inc.*, 619 F.2d 676, 677–78 (7th Cir.1980); *Welles Products*, 563 F.Supp. at 449; *NTN Bearing Corp.*, 557 F.Supp. at 1276.[7] The facts that defendant was physically present to transact business in Illinois; that the contract was partially negotiated, executed, and substantially performed in Illinois; and that the contract is likely governed by Illinois law give Illinois a substantial interest in adjudicating this dispute and made it foreseeable that defendant might be sued in Illinois. *See Snyder*, at 416–17; Cf. *Froning & Deppe, Inc. v. Continental Illinois National Bank &*

*Charles E. Scott, Inc.*, 557 F.Supp. 1273, 1276 (N.D.Ill.1983).

**6.** Counsel also stated at argument that he knew of several recent cases supporting defendants' position and would provide them to the court. He has not done so.

**7.** Jurisdiction over a non-resident defendant may not, of course, be premised on his physical presence where that presence was obtained by plaintiff's trickery or "luring" designed solely to create a jurisdictional predicate. *See Veeninga v. Alt*, 111 Ill.App.3d 775, 67 Ill.Dec. 544, 545–46, 444 N.E.2d 780, 781–82 (1982); *Unarco Industries v. Frederick Mfg. Co.*, 109 Ill.App.3d 189, 64 Ill.Dec. 808, 810, 440 N.E.2d 360, 362 (1982).

There is no suggestion of "luring" in this case. Plaintiff's affidavit (by Niemira) states that defendants asked to come to Chicago to look over plaintiff's operation and meet its principals. Defendants do not deny this, and even if they did we would be bound to accept plaintiff's version as true. Defendants make much of their claim that the Chicago meeting was just a convenient "stopover" on their way to a family gathering in Michigan. But even if their ultimate destination was Michigan, this would not change the fact that they voluntarily came into Illinois or that they did so for business purposes.

*Trust Co.*, 695 F.2d 289, 294 (7th Cir.1982). *See also Welles Products*, 563 F.Supp. at 449 (where payment is to be made in Illinois, defendant "must have contemplated the effects in Illinois" of its failure to pay).

 We hold that jurisdiction over defendants is conferred by section 2–209 and is consistent with due process requirements. Accordingly, the judgment of the district court granting the motion to dismiss is reversed and the case remanded to the district court for further proceedings. Circuit Rule 18 shall apply.

REVERSED AND REMANDED.