Edward F. HEIL, Plaintiff–Appellant,

v.

MORRISON KNUDSEN CORPORATION, William M. Agee, William J. Deasy, William C. Douce, George W. Gilfillan, Robert A. McCabe, Velma V. Morrison, K.M. Price, J.L. Scott, and Richard H. Vortmann, Defendants–Appellees.

No. 88–2537.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1988.

Dec. 1, 1988.

Keith F. Bode, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

David E. Springer, Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for defendants-appellees.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

Edward Heil appeals from a judgment dismissing, for lack of personal jurisdiction over the defendants, his diversity suit against Morrison Knudsen Corporation and the members of its board of directors. The suit, filed in the federal district court in Chicago, charges Morrison Knudsen and its directors with having violated their fiduciary duty to Heil, a shareholder, by adopting a shareholders' rights agreement directed against hostile takeovers—the proverbial "poison pill." Heil is a citizen of Illinois. Morrison Knudsen is a Delaware corporation with its principal place of business in Idaho. The directors live in different states but none is a resident of Illinois. For jurisdiction over the defendants Heil relies primarily on the Illinois long-arm statute, which subjects nonresidents to the jurisdiction of Illinois courts with respect to "any cause of action arising from ... (1) The transaction of any business within [Illinois, or] (2) The commission of a tortious act within [Illinois]." Ill.Rev.Stat. ch. 110, ¶ 2–209(a).

In 1986, meeting in a conference room at Chicago's O'Hare Airport, Morrison Knudsen's board (several members "attending" by speakerphone) adopted a by-law which provided that if any person or group became the beneficial owner of 20 percent or more of Morrison Knudsen stock, or made a tender offer for 30 percent or more, every other shareholder would become entitled to buy, at a steep discount, as many new shares of the stock of the corporation as he already owned. The result would be to dilute the value of the 20 percent acquirer's share by about 50 percent. The purpose and probable effect of a poison pill is to discourage hostile takeovers; and where its motivation is to protect incumbent management at the shareholders' expense, the adoption of a poison pill may violate the directors' fiduciary duty to the shareholders. See *Dynamics Corp. of America v. CTS Corp.*, 794 F.2d 250, 253–56 (7th Cir.1986), rev'd on other grounds, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987); *Dynamics Corp. of America v. CTS Corp.*, 805 F.2d 705 (7th Cir.1986). As is usual with poison pills, the shareholders of Morrison Knudsen were not consulted about the board's action or asked to vote on it.

Heil did not begin buying stock in Morrison Knudsen until May 1988. By the end of June he had acquired 6.2 percent of that

stock, and having thus passed 5 percent he filed with the Securities Exchange Commission, as required by the Williams Act, 15 U.S.C. § 78m(d)(1), a Schedule 13D disclosing his acquisition. See 17 C.F.R. § 240.13d–1. A few days later Morrison Knudsen sued Heil in the federal district court in Idaho, charging that his Schedule 13D was materially false and misleading; among other things, it failed to disclose that the State of Illinois was seeking an order barring any corporation of which Heil was a director from doing business with any public body in the state. Morrison Knudsen engages in substantial construction activities in Illinois through subsidiaries, and according to its complaint in the Idaho suit it fears that if Heil became a director of Morrison Knudsen those subsidiaries might be barred from bidding on public works projects in Illinois. Two days after Morrison Knudsen filed the suit in Idaho, the board of directors, this time meeting in New York, amended the poison pill so that its provisions would be triggered by the acquisition of only 10 percent of the corporation's stock by an "adverse person," defined (so far as is relevant here) to match Heil's status in the administrative proceedings in Illinois: a "defendant in or target of any action, proceeding or investigation ... [that] could hinder or prevent [Morrison Knudsen] from doing any significant business ... as a result of such person's affiliation with" the corporation. In his original complaint in the present suit, Heil had challenged only the amended pill. But when the defendants moved to dismiss the complaint for lack of personal jurisdiction, Heil quickly amended it to challenge the original poison pill as well, noting that the amendment had changed only the trigger of the poison pill and not its operation once triggered.

The long-arm statute authorizes the state courts of Illinois (and the federal district courts there as well, by virtue of Fed.R. Civ.P. 4(e)) to exercise jurisdiction over nonresidents with respect to causes of action arising either from the transacting of business in Illinois or the commission of a tort there. And independent of the statute there is jurisdiction if the nonresident is doing business in Illinois in a substantial way; the plaintiff need not show that the cause of action arose from that business. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 199–203, 57 Ill.Dec. 730, 734–35, 429 N.E.2d 847, 851–52 (1981).

In this court Heil asserts that his cause of action for breach of fiduciary obligation arose both from the 1986 meeting at O'Hare at which the board of directors adopted the original poison pill and from Morrison Knudsen's construction business in Chicago, the fulcrum of the corporation's suit against Heil in Idaho. If we were willing to overlook the fact that Heil did not apprise the district judge of the argument that the relevant business transactions in Illinois included Morrison Knudsen's construction business, and if we pierced the corporate veil that separates Morrison Knudsen's subsidiaries from Morrison Knudsen—not an implausible move, given Morrison Knudsen's litigating posture in Idaho—this ground for personal jurisdiction over the corporation would be persuasive. True, the long-arm statute does not authorize jurisdiction on the basis of the defendant's transacting business in Illinois; the *cause of action* must arise from that transacting. But if the allegations in Morrison Knudsen's complaint in the Idaho suit are taken at face value, the breach of fiduciary obligation in adopting a poison-pill amendment aimed directly and unmistakably at Edward Heil arose from Morrison Knudsen's construction business in Illinois. For that was the business that allegedly would be jeopardized if Heil became a director of Morrison Knudsen. Moreover, the construction business in Illinois, once it is attributed to Morrison Knudsen, is the kind of substantial, ongoing business activity that would make Morrison Knudsen subject to jurisdiction under the "doing business" doctrine, which has no "arising from" component.

But we are not disposed to relieve Heil of his waiver in the district court. Although the amended complaint refers to Morrison Knudsen's construction activities in Illinois, it does so—as far as one can tell from reading either the complaint or any other

part of the record before the district court—merely to set the background for the Idaho suit. Heil never asserted that these activities were relevant to personal jurisdiction. This is big-time commercial litigation, with experienced lawyers on both sides, and even less than elsewhere are we here inclined to allow a party to urge reversal of the district judge on grounds not presented to him. Moreover, this may not be a case merely of inadvertence. Heil may have had a tactical reason for not trying to base jurisdiction on Morrison Knudsen's business in Illinois. For if he had done so, he would have supplied ammunition for Morrison Knudsen's argument that the directors were acting in the best interests of the corporation by amending the poison pill: they wanted to protect the subsidiaries' extensive public works business in Illinois.

 Standing by itself, the meeting at O'Hare was not enough "doing business" in Illinois to support jurisdiction apart from the long-arm statute. It could, however, constitute the "transaction of any business" in Illinois, and therefore support jurisdiction if Heil's cause of action arose out of it. The usual "transaction of any business" to which the provision applies is the negotiation, making, or execution of a contract, as in *Capital Associates Development Corp. v. James E. Roberts–Ohbayashi Corp.*, 138 Ill.App.3d 1031, 93 Ill.Dec. 563, 487 N.E.2d 7 (1985)—the provision being most naturally viewed as a complement to the statute's tort provision. In one case we interpreted the "transaction of any business" provision to embrace tort claims for indemnity and contribution between joint tortfeasors, noting however that the claim for indemnity was quasi-contractual and that the claim for contribution was ancillary to the claim for indemnity. *In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 915 (7th Cir.1983). But we have also upheld personal jurisdiction under the "transaction of any business" provision over an alleged trademark infringer—and trademark infringement is a tort, not a quasi-contractual incident to a tort, as indemnity among joint tortfeasors is. *J. Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*,

821 F.2d 399 (7th Cir.1987). The provision thus has not been confined to contract or quasi-contract cases. And, coming even closer to the present case, we find a decision in the Illinois Appellate Court in which jurisdiction over the defendant in a suit for breach of fiduciary obligation was upheld under the "transaction of any business" provision. *Mandalay Associates Limited Partnership v. Hoffman*, 141 Ill.App.3d 891, 96 Ill.Dec. 225, 491 N.E.2d 39 (1986). The transactions in Illinois were, it is true, more extensive in all these cases than the transaction here (the meeting at O'Hare), but as the wording of the statutory provision implies and we have opined, a single transaction can be enough. *Snyder v. Smith*, 736 F.2d 409, 416 (7th Cir.1984).

 But even if the 1986 board of directors' meeting at O'Hare was a significant enough event in the life of Morrison Knudsen to count as the "transaction of any business," Heil would not be home free, for he would also have to show that the breach of fiduciary obligation of which he complains arose from the meeting. The "arising from" requirement is liberally construed—all one need be able to say is that the cause of action lies somehow "in the wake" of the Illinois transaction. See, e.g., *id.* at 416. But this is not to be taken literally. (How could it be? The maritime metaphor is just that—a metaphor.) It is not to be supposed that every time a board of directors meets, it makes waves in whose wakes causes of action float—or, to change the metaphor, plants jurisdictional seeds that sprout years later. The adoption of the original poison pill at O'Hare Airport in 1986 may have been the first step in a scheme to entrench the management of Morrison Knudsen, but it was not the first step in a scheme to violate fiduciary obligations to Heil, who was not an actual or (so far as anyone connected with Morrison Knudsen knew) a potential shareholder in the corporation. Since poison pills do not require shareholder approval—that is one of their greatest charms for management—the board in 1988, determined to stop Heil, could as easily have adopted a brand-new poison pill as amend-

ed the old one. Moreover, the 1986 meeting was precautionary. Heil was not in the picture. Had no poison pill been adopted in 1986, the board would in all likelihood have adopted a poison pill in 1988 to stop Heil. Then there would have been no earlier meeting in Illinois to serve as a jurisdictional handle. There is no vital—no organic—connection between the 1986 meeting and the 1988 meeting at which, Heil charges, the board violated its fiduciary obligations to him. Although we can find no case on point, the following Illinois decisions illustrate the Illinois courts' unwillingness to base jurisdiction on transactions only remotely, adventitiously related to the cause of action: *Colnar v. Baldknobbers, Inc.*, 107 Ill.App.3d 234, 239, 63 Ill.Dec. 69, 72, 437 N.E.2d 718, 721 (1982); *Loggans v. Jewish Community Center*, 113 Ill.App.3d 549, 69 Ill.Dec. 484, 447 N.E.2d 919 (1983); *Brainerd v. Balish*, 164 Ill.App.3d 836, 115 Ill.Dec. 792, 518 N.E.2d 317 (1987); *Konicki v. Wirta*, 169 Ill.App.3d 21, 27, 119 Ill.Dec. 692, 696, 523 N.E.2d 160, 164 (1988).

It is common for large corporations to hold their board meetings in different places rather than just at corporate headquarters. Heil's theory of jurisdiction would invite every plaintiff in corporate litigation to sift hopefully through the minutes of board meetings in search of a link between the cause of action and whatever state the plaintiff thought most favorable to its suit. It is not a purpose of long-arm statutes to incite such forum-shopping sprees.

■ All that is left to Heil is the argument that his cause of action arises from a tort committed in Illinois. Noting that the original complaint didn't challenge the poison pill adopted at the O'Hare meeting in 1986 but only the amendment adopted in New York in 1988, the defendants argue that Heil has two separate cause of actions, and only the first is within the reach of the long-arm statute. The district judge (from whose reasoning the defendants have cut themselves adrift, while defending the outcome) thought that the original poison pill and the amendment had merged into a single tort completed, and therefore occurring, in New York. Heil agrees that the original pill and the amendment merged into a single tort—but one committed in 1986 at O'Hare Airport.

All this is a dreadful tangle, and has led the parties into the labyrinth known as Illinois res judicata doctrine. See *LaSalle National Bank v. County of DuPage*, 856 F.2d 925 (7th Cir.1988). It will help in sorting things out to imagine that Heil had bought stock in Morrison Knudsen before the poison pill was first adopted in 1986 *and* had brought this suit before the poison pill was amended in 1988. Then he could obtain personal jurisdiction (at least in a derivative suit—which this however is not) over the defendants in Illinois by virtue of the tort provision of the long-arm statute, because the alleged breach of fiduciary obligation would have occurred at the meeting at O'Hare in which the defendants adopted the poison pill. But Heil didn't begin buying stock in the corporation until 1988 and he didn't sue until the defendants amended the poison pill to reduce the trigger point from 20 percent to 10 percent for any "adverse person"—namely Heil. The defendants had no fiduciary obligation to someone who did not own shares—Heil before 1988.

■ Heil argues that the adoption of the poison pill and its amendment constituted a single, continuous course of conduct designed to protect the corporation's management against potential challengers and that the breach of fiduciary obligation arose from that course of conduct. However, a tort is not wrongful conduct in the air; the arrow must hit its mark. See, e.g., *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir.1982). Until there is hurt, there is no tort. The poison pill concocted at O'Hare Airport represented a potential harm to anyone who amassed a 20 percent bloc of Morrison Knudsen stock or made a tender offer for 30 percent, but Heil, who didn't even start buying stock in Morrison Knudsen until two years later, was willing to take his chances with the poison pill as long as the trigger point was 20 percent. We know what his real concern was, for three weeks after the trigger point was lowered to 10 percent for any "adverse person" (i.e., him), he brought this suit. Once the poison pill was amended, more-

over, Heil could not be hurt by the original poison pill, because long before he would bump up against its 20 percent ceiling he would hit the 10 percent ceiling designed just for him. It is true that what is triggered are the dilution provisions of the original pill, but activating the trigger is what would make those provisions hurt Heil. The conduct that he complains of occurred in New York in 1988, not Illinois in 1986.

Our conclusion is fortified by *Young v. Colgate–Palmolive Co.*, 790 F.2d 567, 570 (7th Cir.1986). It was a case much like this—an attack on a poison pill—and we held that for purposes of the tort provision in the Illinois long-arm statute, the cause of action for breach of fiduciary obligation occurred where the poison pill was adopted. The adoption of the poison pill here was in a sense divided between two jurisdictions, Illinois and New York, but the *relevant* adoption occurred in New York, for it was there that the fatal amendment was made. The courts of New York are open to Heil to renew this suit, and no doubt he has other potential forums as well. But Illinois is not one of them. There is no personal jurisdiction. The suit was properly dismissed.

AFFIRMED.