Robert SCHARTNER, Plaintiff,

v.

NORTHWEST INTERNATIONAL EQUIPMENT COMPANY, INC., Defendant.

No. 88–C–273.

United States District Court, E.D. Wisconsin.

Sept. 14, 1988.

Randall Nesbitt, Pinkert, Smith, Weis, Jinkins & Nesbitt, Sturgeon Bay, Wis., for plaintiff.

Thomas Schober, Schober & Ulatowski, Green Bay, Wis., for defendant.

DECISION AND ORDER

CURRAN, District Judge.

Plaintiff Robert Schartner, a citizen of Wisconsin, is in the business of growing and selling fruit in Door County, Wisconsin. In 1987, he contracted to purchase equipment costing $46,490.00 for processing apples from the defendant Northwest International Equipment Company, Inc., a company which is incorporated in the State of Washington with its principal place of business in Yakima, Washington. The plaintiff claims that this equipment did not perform properly after he had it installed.

Therefore, he commenced this action claiming breach of contract, breach of warranty and misrepresentation and seeks recission of the contract, return of the purchase price, incidental and consequential damages, punitive damages, prejudgment interest, and costs. This court has diversity jurisdiction over the subject matter of these claims. *See* 28 U.S.C. § 1332.

The defendant has responded to the complaint by moving to dismiss on the ground that this court lacks personal jurisdiction over it. *See* Federal Rule of Civil Procedure 12(b)(2). After this motion was filed the plaintiff was granted a continuance to conduct discovery to support his allegation of jurisdiction. The time for conducting this discovery has now passed and Northwest has renewed its motion which is supported by the affidavits of Ted Marquis, Sr., the president of Northwest International Equipment Company, Inc.; of Raymond Penuel, the person Northwest sent to inspect the equipment sold to Schartner; and of James Carter, a salesman for Northwest. The plaintiff has responded by submitting affidavits from the plaintiff, Robert Schartner, and exerpts from the deposition testimony of Randy Morrison, the advertising manager of *The Goodfruit Grower* magazine, of James Carter, of Theodore M. Marquis, and of Ray Penuel.

According to the allegations of the complaint and the affidavits, in May of 1986, plaintiff Robert Schartner responded to an advertisement in *The Goodfruit Grower,* a national trade publication, by calling the advertiser, Sirron Systems, for information about Sirron's cold air fruit dryer. *See* Affidavit of Robert Schartner at ¶ 3. *The Goodfruit Grower* is a magazine of national circulation which had 14,106 subscribers in 1985; 12,541 subscribers in 1986; and 12,500 subscribers in 1987. Although most of the subscribers have addresses in the Pacific Northwest, there were 27 Wisconsin subscribers in 1985; 13 Wisconsin subscribers in 1986; and 26 Wisconsin subscribers in 1987. *See* Deposition Upon Oral Examination of Randy Morrison at 9–11, Exhibits 4D, 4E & 4F.

On March 19, 1987, defendant Northwest International Equipment Company, Inc. obtained an exclusive license to manufacture and distribute the Sirron equipment. Northwest placed advertising for the Sirron dryer and other fruit processing equipment in *The Goodfruit Grower* from February 1, 1986 through December 1, 1987. *See Id.* at 16–20. In May or June of 1987, the plaintiff responded to one of the advertisements for the cold air dryer and called the defendant to request a sales proposal. *See* Affidavit of Robert Schartner at ¶ 5. On June 12, 1987, the defendant sent Schartner a proposal for the sale of several pieces of equipment, including a cold air dryer, a dump tank, a small fruit eliminator, a brusher/waxer, and a sorting table. The proposal stated that:

> NORTHWEST, with over 40 years of experience in the fruit industry, is committed to quality. We are also committed to service after the sale and are prepared to respond quickly to your request for service or technical questions, if the need should arise. In other words, NORTHWEST stands behind their products 100%.

Complaint at Exhibit A. This written proposal was followed by a telephone call from Northwest to Schartner for the purpose of soliciting the sale. *See* Affidavit of Robert Schartner at ¶ 7.

On July 6, 1987, the plaintiff placed an order for four pieces of the equipment by calling Northwest in Washington. *See* Affidavit of Robert Schartner at ¶ 8 & Exhibit 3. The total price of this purchase was $46,690.00.[1] In August and September the plaintiff sent partial payments of $20,000.00 and $13,639.17 to the defendant. *See Id.* at ¶¶ 11 & 13. The remainder of the purchase price, plus accrued interest, remains unpaid. In November, Schartner ordered a small fruit eliminator priced at

---

**1.** This sale constituted approximately one-sixth of Northwest's total gross sales in 1987. *See* Deposition Upon Oral Examination of Theodore M. Marquis at 34. Northwest's president says that much of this equipment is produced on a custom basis. *See Id.* at 18.

$2,950.00,[2] and in December he placed an order for a gauge priced at $12.35. *See* Affidavit of Robert Schartner at Exhibit 8; Deposition Upon Oral Examination of James D. Carter at Exhibit 24. All the equipment except the gauge was sent in two shipments by the defendant to the plaintiff in Sturgeon Bay, Wisconsin in November of 1987. Northwest also sent instructions for assembly, but encouraged Schartner to have a Northwest serviceperson travel to Wisconsin to assist with the installation. *See* Affidavit of Robert Schartner at ¶ 21 & Exhibit 13. Instead, Schartner engaged "professionals" to assemble the equipment and paid them $25,862.51. *See* Complaint at ¶ 11; Affidavit of Robert Schartner at ¶ 22.

On January 14, 1988, Schartner sent a telegram to Northwest rejecting the equipment on the ground that it had failed to work properly. *See* Affidavit of Robert Schartner at Exhibit 16. On January 20, 1988, Northwest sent Ray Penuel to Wisconsin to inspect the equipment and to discuss the trouble Schartner alleged he was having. *See Id.* at ¶ 27; Deposition Upon Oral Examination of Ray Penuel. Schartner remained dissatisfied and filed this lawsuit on March 15, 1988, seeking recission, return of the purchase price, incidental and consequential damages of $164,862.51, punitive damages of $100,000.00 and prejudgment interest.

A federal district court in Wisconsin has personal jurisdiction over a party in a diversity action only if the Wisconsin long-arm statute, Wis.Stat. § 801.05, authorizes jurisdiction and if the exercise of jurisdiction is consistent with due process. *See Jacobs/Kahan & Company v. Marsh,* 740 F.2d 587, 589 (7th Cir.1984). Upon a challenge by a defendant, the burden shifts to the plaintiff to demonstrate the propriety of exercising *in personam* jurisdiction over the defendant. *See United States Railway Company v. Port Huron & Detroit Railroad Company,* 495 F.2d 1127, 1128 (7th Cir.1974). If the issue is to be resolved by the court solely on the basis of

pleadings and materials attached thereto, the plaintiff need only make a *prima facie* case of jurisdiction in order to avoid a motion to dismiss. *See Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). A plaintiff establishes a prima facie case by showing that there is compliance with the forum state's long arm statute. *See Brunswick Corporation v. Suzuki Motor Company, Ltd.,* 575 F.Supp. 1412, 1416–17 (E.D.Wis.1983). However, if, as here, the party seeking dismissal on jurisdictional grounds submits affidavits, the nonmoving party may not rest upon allegations or denials in its pleadings, but must respond with affidavits or other evidence setting forth specific facts showing that the court has jurisdiction. *See Weller v. Cromwell Oil Company,* 504 F.2d 927, 929 (6th Cir.1974). The court is required to consider these pleadings and affidavits in the light most favorable to the plaintiff. *See Jacobs/Kahan & Company,* 740 F.2d at 589.

In this case the plaintiff has established a *prima facie* case by pointing to subsections 801.05(4)(a) and 801.05(5)(c) & (e) of the Wisconsin Statutes which, it contends, apply in this situation. These subsections provide that:

**Personal jurisdiction, grounds for generally.** A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

. . . .

**(4) LOCAL INJURY; FOREIGN ACT.** In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:

(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

---

**2.** It is not clear whether the price of the small fruit eliminator was included in the $46,690.00 purchase price.

(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

(5) **LOCAL SERVICES, GOODS OR CONTRACTS.** In any action which:

. . . .

(c) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value; or

. . . .

(e) Relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred.

Wis.Stat. § 801.05(4), (5)(c) & (e).

The plaintiff believes that these subsections apply because:

The factual background of this case indicates that the Plaintiff purchased allegedly faulty equipment from the Defendant and, as a result, sustained damages. The product was manufactured in the State of Washington and shipped to Wisconsin. Therefore, the foreign action of manufacturing the product caused a local injury to the Plaintiff in satisfaction of Wisconsin Statute, Section 801.05(4).

In addition, the evidence indicates that there was solicitation and service activities carried on within Wisconsin by the Defendant. the [sic] Defendant advertised in national trade publications expecting those publications to be reviewed by potential buyers in the State of Wisconsin, carried on telephone solicitation of the Plaintiff, a potential buyer, and sent a service representative to the State of Wisconsin regarding this case.

. . . .

In addition to the local injury; foreign action section conferring jurisdiction

upon Wisconsin, Section 801.05(5)–local goods, services or contracts, applies to confer jurisdiction. (c) is clearly applicable in that the Defendant made a promise from the State of Washington to deliver goods into the State of Wisconsin. (e) is also applicable in that the goods were actually received by the Plaintiff in the State of Wisconsin from the Defendant.

Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 9–11.

In support of jurisdiction under subsection 801.05(4), the plaintiff claims that he suffered injury in Wisconsin and that, at the time, the defendant was soliciting sales in Wisconsin through its advertising in *The Goodfruit Grower.* However, subsection 801.05(4) does not apply to all types of local injuries. Wisconsin courts have held that this subsection applies only to tort actions. *See, e.g., Towne Realty, Inc. v. Bishop Enterprises, Inc.,* 432 F.Supp. 691, 693 (E.D.Wis.1977); *Nagel v. Crain Cutter Company,* 50 Wis.2d 638, 642, 184 N.W.2d 876, 878 (1971). Therefore, although the complaint states causes of action for breach of contract, breach of warranty and misrepresentation, subsection 801.05(4) could only apply to the misrepresentation claim. *See Lulling v. Barnaby's Family Inns, Inc.,* 482 F.Supp. 318, 321–22 (E.D. Wis.1980).

In support of jurisdiction under subsection 801.05(5)(c), the plaintiff maintains that the defendant promised to deliver apple processing equipment to him in Wisconsin. And although the defendant's sales proposal states that the goods will be delivered F.O.B. Yakima, Washington, *see* Affidavit of Robert Schartner at Exhibit 2, p. 3, Northwest's business development manager testified at his deposition that the defendant shipped the equipment to Sturgeon Bay, Wisconsin and paid the shipping charges.[3] *See* Deposition Upon Oral Examination of James D. Carter at 21.

---

**3.** Schartner, on the other hand, has submitted copies of documents showing that he was billed for the shipping charges. *See* Affidavit of Robert Schartner at Exhibits 10 & 11. In his affidavit Schartner claims that he paid $5,000.00 for

shipping. *See Id.* at ¶¶ 17 & 18. He also says that he attempted to send a truck to pick up the equipment in Washington but that the defendant refused to load the truck. *See Id.* at ¶ 19.

■ It is unclear whether the parties' agreement contemplated that the defendant would be required to ship the equipment to Wisconsin, so it is unclear whether subsection 801.05(5)(e) applies. However, it is clear that the plaintiff actually received the goods in the state from the defendant, so subsection 801.05(5)(e) authorizes service of process on the defendant for the breach of contract and breach of warranty claims.

A showing of compliance with section 801.05 by the plaintiff raises a presumption of compliance with due process, but in this case the defendant has submitted the affidavit of its president Ted Marquis, Sr., who attempts to establish that Northwest does not have minimum contacts with the State of Wisconsin. Marquis points out that Northwest's only manufacturing plant is in Yakima, Washington; that Northwest has never employed any agents or manufacturing representatives in Wisconsin and has never sold any equipment in Wisconsin except the materials sold to the plaintiff; that Northwest has not engaged the services of telephone solicitors or other solicitors in the State of Wisconsin; and that Northwest has no property, bank account or brokerage accounts in Wisconsin. *See* Affidavit of Ted Marquis, Sr. at ¶¶ 2 & 3. Furthermore, the machinery at issue was assembled in Washington and no officer or employee of the company[4] has ever visited Wisconsin in connection with the contract at issue. *Id.* at ¶¶ 4 & 5.

Confronted by this evidence, the plaintiff cannot rest on the allegations of his Complaint, *see, Steward Coach Industries, Inc. v. Moore*, 512 F.Supp. 879, 883 (S.D.Ohio 1981), but must bear the burden of showing that the exercise of jurisdiction would not offend the Due Process Clause of the Four-

teenth Amendment to the United States Constitution. The Due Process Clause requires that in order to assert specific jurisdiction[5] over a nonconsenting, nonresident defendant, a court must determine whether the nonresident defendant has, through its actions, purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law. The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958). The minimum contacts analysis requires more than counting the nonresident's contacts with the forum. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). As the Supreme Court has observed:

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." ... By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," ... the Due Process Clause "gives a degree óf predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." ... Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is

---

4. The parties agree that the only agent of Northwest to set foot in Wisconsin was Ray Penuel, a steel fabricator, who was hired by Northwest to travel to Wisconsin to check on the problems Schartner claimed to be experiencing with the apple processing equipment. Penuel alleges that he is not an employee of Northwest. *See* Deposition Upon Oral Examination of Ray Penuel at 2.

5. A state exercises "specific jurisdiction" over a defendant when it "exercises personal jurisdic-

tion over a defendant in a suit arising out of or related to the defendant's contacts with the forum" *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). A state exercises "general jurisdiction" over a defendant when it "exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Id.* at 415 n. 9, 104 S.Ct. at 1872 n. 9. Specific jurisdiction is involved in the instant case.

satisfied if the defendant has "purposefully directed" his activities at residents of the forum ... and the litigation results from alleged injuries that "arise out of or relate to" those activities[.] *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–2182, 85 L.Ed.2d 528 (1985) (citations and footnote omitted).

The "purposeful availment" requirement delineates reasonable anticipation of out-of-state litigation. *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239. This requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state. *See Id.* With respect to interstate contractual obligations, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. *See Id.* at 473, 105 S.Ct. at 2182.

After deciding that a defendant purposefully established minimum contacts with the forum state, the Court must determine whether maintenance of the suit comports with "traditional notions of fair play and substantial justice." *Id.* at 476, 105 S.Ct. at 2184, citing *International Shoe Company v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945); *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987). In appropriate cases, courts may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,*

471 U.S. at 476–477, 105 S.Ct. at 2184. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be needed. *See Id.* Often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant. *Asahi,* 107 S.Ct. at 1034. Nevertheless, the fairness factors cannot of themselves invest the court with jurisdiction over a nonresident when the minimum-contacts analysis weighs against the exercise of jurisdiction. *World–Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980).

In this case the contacts enumerated by the plaintiff include the contract for the sale of the equipment; the defendant's advertising in *The Goodfruit Grower;* the defendant's telephone calls to Wisconsin prior to and after the sale; the defendant's sending of the invoice, instructions and billing statements to Wisconsin; the delivery of the equipment in Wisconsin; and the visit of Ray Penuel to Wisconsin to inspect Shartner's equipment. *See* Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 2–7. All these contacts relate to the sales agreement between Schartner and Northwest. However, it is well-established that a contract between a resident of a state and a nonresident is not enough, by itself, to give the courts of the resident's state jurisdiction over the nonresident in the resident's suit for breach of the contract. *See Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *Afram Export Corporation v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1362 (7th Cir. 1985). Moreover, courts have held that each of the other type of contacts alleged by the plaintiff, standing alone, is insufficient to confer personal jurisdiction over a nonresident seller. *See, e.g., Wisconsin Electrical Manufacturing Company, Inc. v. Pennant Products, Inc.,* 619 F.2d 676, 678 n. 8 (7th Cir.1980) (single visit by an agent of the defendant); *Wulff v. Tele Broadcasting Systems,* 686 F.Supp. 224,

225–26 (E.D.Wis.1988) (advertising in a national trade publication); *Uni–Bond, Ltd. v. Schultz*, 607 F.Supp. 1361, 1371 (E.D. Wis.1985) (exchange of correspondence and telephone calls). Thus, the question becomes whether these contacts are sufficient when considered together.

In *Madison Consulting Group v. State of South Carolina*, 752 F.2d 1193 (7th Cir. 1985), the Seventh Circuit carefully reviewed the leading Supreme Court cases dealing with minimum contacts and concluded that, in a case involving a contract, a factor of prime significance is which party solicited the contract. *Id.* at 1203. In this case Northwest solicited sales from subscribers of *The Goodfruit Grower* when it placed its equipment advertising in the magazine.[6] This fact is not dispositive, however, because several months after the *Madison Consulting Group* opinion was issued, the United States Supreme Court issued its decision in *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), where it shifted the focus to the expectations of the parties. *Burger King* also involved a breach of contract claim and, after its own exhaustive review of the significant cases, the Court held that a nonresident defendant party to a contract can be subjected to personal jurisdiction if the contract documents and course of dealing between the parties establish a substantial and continuing relationship with the plaintiff in the forum state. *Id.* at 487, 105 S.Ct. at 2190. The defendant Rudzewicz, a citizen of Michigan, had approached Burger King, a Florida corporation with principal offices in Miami, seeking a long term franchise

agreement under which the parties contemplated "exacting regulation" from the Florida office. *Id.* at 480, 105 S.Ct. at 2186. Because the defendant purposely sought out a continuing and significant relationship with Burger King's Florida headquarters, the Court ruled that he had established minimum contacts with Florida. The Court emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* at 473, 105 S.Ct. at 2182, quoting *Travelers Health Association v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed.2d 1154 (1950).

■ The instant case involves a sale of a set of equipment which was solicited through trade advertising by the defendant Northwest.[7] The agreement between the parties does not contemplate a continuing relationship in the nature of a franchise or a lease, *see, e.g., Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (franchise); however, the Northwest sales proposal which was substantially accepted by Schartner does contemplate a continuing relationship. It promises that: "We are also committed to service after the sale and are prepared to respond quickly to your request for service or technical questions, if the need should arise." Complaint at Exhibit A. Northwest evinced its willingness to fulfill this promise when it sent Ray Penuel to Wisconsin to inspect the equipment six days after it was rejected by Schartner. The documents constituting the

6. In *Hall's Specialties, Inc. v. Schupbach*, 758 F.2d 214 (7th Cir.1985), the Seventh Circuit affirmed an order dismissing a case for lack of personal jurisdiction over a nonresident seller of a tanker transport. The Illinois defendant had placed an advertisement offering the transport for sale in an Illinois trade magazine. Unbeknownst to the seller, the advertisement was also published in an Indiana trade magazine where it was seen by the Indiana plaintiff who purchased the transport and took it back to Indiana only to discover that it was defective. The court's decision that the Indiana district court did not have jurisdiction turned on the fact that the defendant had not knowingly caused the ad to appear in Indiana and, thus, he

had not purposely availed himself of the privilege of doing business in Indiana and had not invoked the benefits and protections of that forum's laws. *See Id.* at 216–17. In contrast, the instant case presents a situation in which the defendant knowingly caused its ad for apple processing equipment to be sent to all subscribers of *The Goodfruit Grower*.

7. The plaintiff invites the court to give weight to the fact that the purchase price—$46,690.00— was substantial. However, the amount of the contract at issue was conspicuously missing from the list of factors the Supreme Court deemed important in *Burger King*.

parties' agreement do not require that the buyer return the equipment to Washington for repair.

■ Recently, another court in this district declined to assert personal jurisdiction over a nonresident seller of telephone advertising equipment under seemingly similar circumstances. *See Wulff v. Tele Broadcasting Systems, Inc.,* 686 F.Supp. 224 (E.D.Wis.1988). In *Wulff,* the Wisconsin plaintiff learned of the equipment through the defendant's advertisement in a national trade publication and contacted the defendant to arrange a purchase. The defendant had made no other sales in Wisconsin and, aside from the advertising, had used no other means to solicit sales in Wisconsin. The parties dealt with one another through use of the telephone and the mails. No agent of the defendant appeared in Wisconsin and the defendant did not maintain an office, a bank account, or a telephone number in Wisconsin. Given these limited contacts, the court ruled that "the due process tenet of fair play would be seriously offended by this court's exercising personal jurisdiction over the defendant." *Id.* at 225. In *Wulff* the parties' relationship ended with the sale. In the instant case, by contrast, the defendant promised to keep the fruit processing equipment in repair and sent troubleshooter Ray Penuel to Wisconsin to investigate the alleged malfunction. Moreover, Northwest, with the expectation that it stood to gain a significant economic benefit, purposefully reached out through its advertising to sell its custom-built equipment to a Wisconsin buyer. Under these circumstances, the quality of the contacts are sufficient to subject Northwest to *in personam* jurisdiction in Wisconsin. *See generally Thermal Insulation Systems, Inc. v. Ark–Seal Corporation,* 508 F.Supp. 434 (D.Kan.1980).

■ Having decided that the jurisdictional contacts with Wisconsin are sufficient, the court must also consider whether maintenance of the suit comports with "traditional notions of fair play and substantial justice." *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. To this end the parties have made no state interest arguments, but Wisconsin obviously has an interest in protecting its citizens against nonresidents who breach contracts. *See, e.g., Doug Sanders Golf Intercontinental of Southeastern Wisconsin, Inc. v. American Manhattan Industries, Inc.,* 359 F.Supp. 918, 921 (E.D.Wis.1973); *Clement v. United Cerebral Palsy of Southeastern Wisconsin, Inc.,* 87 Wis.2d 327, 338, 274 N.W.2d 688, 693 (1979). The defendant has made no allegations of hardship. However, Schartner has alleged that:

> I have a small apple processing business with its only location in Sturgeon Bay, Wisconsin, and it would be a great inconvenience and expense for myself as well as the witnesses I intend to call upon this matter to be required to travel to the State of Washington to litigate this case.

Affidavit of Robert Schartner at ¶ 29. This generalized allegation has only minimal persuasive value, but in the absence of any counter allegation by the defendant and because the equipment in question is located in this district, the balance of convenience tips in favor of the Wisconsin forum.

### ORDER

For the reasons explained above, the court ORDERS that the Defendant's Second Resubmitted Motion to Dismiss for Lack of Personal Jurisdiction (filed July 11, 1988) IS DENIED.

IT IS FURTHER ORDERED that on or before September 26, 1988, the defendant shall serve and file an answer to the complaint. *See* Federal Rule of Civil Procedure 12(a).

IT IS FURTHER ORDERED that the court will hold a telephonic scheduling conference at 8:30 A.M. on October 11, 1988. *See* Federal Rule of Civil Procedure 16.