CAPITAL ASSOCIATES DEVELOPMENT CORPORATION *et al.*, Plaintiff-Appellee, v. JAMES E. ROBERTS-OHBAYASHI CORPORATION, Defendant-Appellant (American Arbitration Association, Defendant).

First District (4th Division)   No. 85—2146

Opinion filed November 7, 1985.—Rehearing denied December 18, 1985.

Brydges, Riseborough, Morris, Franke & Miller, of Waukegan (Thomas A. Morris, Jr., and Nicholas Anaclerio, Jr., of counsel), for appellant.

Rudnick & Wolfe, of Chicago (Mark L. Shapiro and James A. Flesch, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

This proceeding was initiated by plaintiff, Capital Associates Development Corporation (Capital)[1], filing its action for declaratory judgment and injunctive relief. Defendant, James E. Roberts-Ohbayashi Corporation (Roberts), appeals from a temporary restraining order (TRO) issued by the circuit court of Cook County enjoining Roberts from seeking arbitration in California of a contract dispute it has with Capital.

On appeal, Roberts argues that to the extent any injunctive relief was granted to Capital by order of the circuit court of Cook County, that order was invalid and improper in that: (1) the trial court lacked *in personam* jurisdiction over Roberts; (2) the order was issued with-

---

[1]Capital is a general partner of Lake Merritt Associates, a California limited partnership.

out notice; (3) the order was entered without an evidentiary hearing; and (4) the order lacked the specificity and formal detail required by the Illinois Injunction Act. Ill. Rev. Stat. 1983, ch. 110, par. 11—101 *et seq.*

We affirm the trial court's finding of *in personam* jurisdiction and remand for an immediate evidentiary hearing on whether a permanent injunction should issue.

BACKGROUND

In early 1980, Roberts and Capital executed a written agreement under which Roberts agreed to supply, and Capital agreed to pay for, construction services and materials necessary to build a multi-unit residential building in Oakland, California. The contract provided that Roberts would substantially complete the building by mid-1981 and that Capital would, through an installment plan, pay Roberts $9,412,500 for the completed work.

In July of 1982, Roberts accepted the final installment payment from Capital. At that time, E. F. Winthers, the president of Roberts, signed and delivered a "lien waiver and indemnity" agreement to Capital. The agreement purported to acknowledge that Roberts had been fully paid for the services and materials involved in the construction of the residential building. From this point on, however, the facts become disputed.

It is Roberts' position that in 1982, Winthers and Thomas Rosenberg, a general partner of Capital, entered into an oral agreement for extra work and materials to be supplied to the residential building. Under this alleged oral agreement, Rosenberg agreed to pay Roberts an additional $135,925 in one lump sum on January 1, 1983. Roberts thereafter completed its part of the agreement. When January 1, 1983, arrived, however, Capital failed to pay the additional monies owed.

As a result of Capital's failure to pay, Winthers phoned Rosenberg at his Chicago, Illinois, office. During this phone conversation, Winthers claims that Rosenberg informed him of Capital's inability to pay the money owed and asked for an installment schedule to be arranged. Winthers agreed to Rosenberg's proposal and a payment plan was arranged whereby Capital would pay the amount owed in three equal installments on April 1, 1983, 1984, and 1985. Roberts claims that although Capital paid the first installment, Capital has failed to make the remaining two payments. Consequently, in an effort to obtain the money Capital owed, Roberts filed, pursuant to a clause in the original written agreement, a petition with the American Arbitra-

tion Association (AAA) in California.

Capital, on the other hand, relates a completely different story. Capital denies that an oral agreement for extra work was ever reached between Winthers and Rosenberg. Capital also disagrees with Roberts' description of what occurred during the phone call between Winthers and Rosenberg. It is Capital's position that Winthers called to make an offer to Rosenberg; that the offer involved Capital paying additional money to Roberts; and that Rosenberg rejected Winthers' offer. Capital further claims, citing the "lien waiver and indemnity" agreement, that it has fully paid Roberts for its work on the residential building. Consequently, Capital contends that the arbitration Roberts seeks is unwarranted for there is, according to Capital, nothing to arbitrate.

Nevertheless, on November 26, 1984, Roberts' arbitration hearing before the AAA was set to begin. To stop that hearing from proceeding, Capital sought and obtained from the circuit court of Cook County an emergency TRO enjoining Roberts and the AAA from proceeding with the hearing. The trial court's order established December 6, 1984, as the date on which an evidentiary hearing would be held to determine if a preliminary injunction should issue. At that point in time, Capital was not required to supply a bond in connection with the TRO issued by the trial court.

On December 6, 1984, the parties appeared before the trial court. At that time, Roberts filed a special and limited appearance to contest jurisdiction and, during the hearing, moved to quash the service of summons. Roberts claimed that the trial court lacked *in personam* jurisdiction over it. Capital, however, had not received proper notification of Roberts' intent to raise the jurisdiction issue and asked the trial court for time to file a written response. The court found that because Capital failed to receive proper notice, it would be improper to hear the motion to quash *instanter.* Consequently, the court ordered Capital to file its response to Roberts' motion by December 12, and set December 14, 1984, as the hearing date for Roberts' motion to quash. In addition, to maintain the status quo, the trial court continued the force and effectiveness of the TRO until December 14, 1984.

The hearing on December 14, however, failed to resolve Roberts' motion to quash. During that hearing, Roberts filed, *instanter*, a memorandum in support of its motion to quash and also presented the court with additional affidavits supporting Roberts' position. In light of the presentation of this new material, the trial court felt that it was unable to properly rule on Roberts' motion until the new material

had been considered. In addition, Capital requested an opportunity to respond to the issues raised in Roberts' memorandum. As a result of these new developments, the court extended the hearing on Roberts' motion to January 2, 1985. To again insure that the status quo remained in effect, the trial court continued the force and effectiveness of the TRO until the January 2, 1985, hearing date.

On December 27, 1984, however, Roberts filed a removal petition with the United States District Court seeking to transfer the proceedings to that court. Capital responded to Roberts' petition by filing with the District Court an emergency motion to remand. On January 2, 1985, the District Court, finding a lack of diversity, remanded the case back to the circuit court of Cook County. Capital then, on the afternoon of January 2, requested the circuit court to continue in effect or if necessary, reinstate the TRO. Capital made this request because according to the circuit court's December 14, order, the TRO was set to expire on January 2, 1985. Because Roberts' motion to quash was still pending, and because the court desired to maintain the status quo until that motion could be properly heard, the circuit court reinstated the TRO and set January 10, 1985, as the hearing date on Robert's pending motion.

Finally, on January 10, 1985, the trial court was able to hear the parties' arguments regarding Roberts' motion to quash. After all of the evidence was presented, the trial court denied Roberts' motion. Roberts then orally asked the court to set an injunction bond. The trial court agreed that a bond would be set provided Roberts supplied the trial court with a written motion.[2] The trial court then ordered Roberts to file its answer to Capital's complaint and set a status hearing for February 1, 1985. In addition, the trial court continued the force and effectiveness of the TRO until that date.

The next day, January 11, 1985, however, Roberts filed a motion to dismiss the proceedings based on *forum non conveniens*. A briefing schedule was established and on March 2, 1985, the court, after hearing the parties' respective positions, denied Roberts' motion. The TRO remained in effect.

Roberts subsequently petitioned this court for leave to appeal. We denied Roberts' request with regard to the *forum non conveniens* issue, but allowed Roberts to bring its interlocutory appeal challenging the trial court's other rulings.

---

[2]To this day, Robert has failed to supply the trial court with that writing.

Opinion

## I

We first address Roberts' claim that the trial court lacked *in personam* jurisdiction. Roberts asserts that Illinois courts lack *in personam* jurisdiction for several reasons: (1) Roberts is incorporated in California; (2) Roberts does business solely in California; (3) Roberts maintains no office in Illinois; (4) Roberts has constructed no building in Illinois; (5) Roberts has never advertised in an Illinois medium; and (6) Roberts has never solicited business from an Illinois resident.

██ Where a corporation such as Roberts is neither incorporated or licensed to do business in Illinois, the only basis to obtain *in personam* jurisdiction is pursuant to the Illinois long-arm statute (Ill. Rev. Stat. 1983, ch. 110, par. 2—209). In relevant part, that statute provides:

> "Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: (1) the transaction of any business within this State * * *."

Thus, our threshold inquiry is whether Roberts has performed those acts sufficient to constitute the "transaction of any business" within the meaning of the Illinois long-arm statute.

██ █ We note initially that Illinois' long-arm statute reflects a legislative intent to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673.) The due process clause requires that a nonresident defendant, such as Roberts, have sufficient minimum contacts with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 2d 95, 102, 66 S. Ct. 154, 158.) In determining whether sufficient minimum contacts exist, courts should avoid applying any mechanical tests and should instead look to the facts and circumstances of each individual case. (*Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 445 N.E.2d 371). Considerable weight is given to a defendant's voluntary acts for it is by these acts that a defendant "purposely avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla* (1958), 357 U.S. 235,

253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240; *Citizens Bank & Trust Co. v. Pittman* (1977), 52 Ill. App. 3d 137, 367 N.E.2d 265.

In the area of contract law, Illinois courts have found that a single business transaction can be sufficient to constitute the "minimum contacts" necessary to give a court *in personam* jurisdiction over a nonresident defendant. (*Cook Associates v. Colonial Broach & Machine* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27; *Ziegler v. Hodges* (1967), 80 Ill. App. 2d 210, 224 N.E.2d 12.) In determining whether a single business transaction is sufficient, the key factors include: who initiated the transaction, where the contract was formed, and where performance, or a major part thereof, was to be made. (*AAAA Creative, Inc. v. Sovereign Holidays, Ltd.* (1979), 76 Ill. App. 3d 514, 395 N.E.2d 66; *Colony Press, Inc. v. Fleeman* (1974), 17 Ill. App. 3d 14, 308 N.E.2d 78). In addition, the fact that a defendant voluntarily enters into a business transaction with an entity he knows to be an Illinois resident is also an important consideration. *Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 445 N.E.2d 371.

Applying the above-cited principles to the case at bar, we find that the trial court was correct in ruling that it had *in personam* jurisdiction over Roberts. The record discloses that Capital's complete performance under the written contract, namely, paying Roberts the $9,412,500 for the construction of the residential building, took place from an office located in Illinois. In addition, throughout the term of the written construction agreement, Roberts purposely sent requests for payments, proposed change orders, lien waivers, and numerous other letters to Capital's Illinois office. Roberts also placed numerous phone calls to Capital's Illinois office throughout its relationship with Capital. Moreover, if we assume, *arguendo*, that Roberts' version of the facts regarding the alleged oral contract for extra work is correct, those facts would indicate that Roberts initiated negotiations with an entity it knew to be an Illinois resident, that Roberts voluntarily entered into an oral contract (or modification thereof), with an Illinois resident, and that Roberts was also aware that Capital's performance would flow from the State of Illinois. Considering all of these contacts Roberts has with Illinois, we believe that requiring Roberts to defend against Capital's injunction request in an Illinois court does not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 2d 95, 102, 66 S. Ct. 154, 158.

The weakness of the arguments presented by Roberts is that they address Roberts' business activities in general, rather than focusing

on the particular business transactions in dispute here. In other words, our key inquiry, in the case at bar, is whether Roberts has, *through its activities and dealings with Capital*, engaged in the "transaction of any business" within the meaning of the Illinois long-arm statute. While we agree with Roberts that its general business activities are insufficient to render them amenable to the jurisdiction of an Illinois court, we are compelled, after reviewing the record, to find that with regard to the construction contracts in dispute here, Roberts' contracts and activities with Capital, an Illinois entity, are adequate to grant jurisdiction to an Illinois court.

## II

■ Roberts raises three other arguments, each of which attacks the propriety of the trial court's January 10, 1985, decision to reinstate the TRO. Roberts contends that the trial court issued the TRO without proper notice, without an evidentiary hearing, and without the specificity and formal detail required by the Illinois Injunction Act. However, we find it unnecessary to address these issues in light of our decision to remand this case to the trial court for an immediate evidentiary hearing on the merits of Capital's injunction request. We note that the trial court was never able to address the merits of Capital's allegations because of Roberts' multiple motions attacking the trial court's jurisdiction. Consequently, because the parties' predicament remains the same as when the TRO was first issued, and because the merits of Capital's injunction request aer not before us on this appeal, we feel that the parties' respective interests are best protected by remanding this case for an immediate evidentiary hearing on the issue of whether Roberts should be preliminarily or permanently enjoined from seeking arbitration of its claim against Capital.

Accordingly, for the reasons set forth above, the ruling by the circuit court of Cook County finding that it has *in personam* jurisdiction over Roberts is affirmed, and this case is remanded for an immediate evidentiary hearing in accordance with this opinion.

Affirmed and remanded.

JOHNSON and McMORROW, JJ., concur.