SECOND DIVISION
 September 17, 1996




1-94-3746


ALLERION, INC., ) APPEAL FROM THE 
 ) CIRCUIT COURT OF
 Plaintiff-Appellee, ) COOK COUNTY,
 ) COUNTY DEPARTMENT,
 ) LAW DIVISION.
 v. )
 ) 
 )
NUEVA ICACOS, S.A. DE C.V., ) THE HONORABLE
 ) KENNETH L. GILLIS
 Defendant-Appellant. ) JUDGE PRESIDING.

 MODIFIED UPON DENIAL OF REHEARING
 JUSTICE SCARIANO delivered the opinion of the court:
 Plaintiff, Allerion, Inc. is the successor company to
Ultimate Computer Corporation, which entered into an "Agreement
for Purchase of Equipment" ("the contract") with defendant Nueva
Icacos, S.A. de C.V. ("Nueva") on January 28, 1993. After
Allerion, a New Jersey corporation licensed and authorized to do
business in Illinois, filed a breach of contract action against
it, Nueva filed a special appearance, objecting to the court's
exercise of personal jurisdiction over it, and moved to quash
service of summons. 
 In support of its objection, Nueva submitted the affidavit
of its "General Administrative Manager", Juan M. Rodriguez,
which: denied that any of its agents or representatives had ever
entered Illinois for any purpose; claimed that neither party to
the contract resided in Illinois; alleged that the contract did
not require any performance in Illinois; stated that the contract
called for the application of New Jersey law; and denied that it
ever sought or obtained any benefits or protections of Illinois
law or performed any acts which would subject it to the
jurisdiction of the Illinois courts.
 Allerion's response included the affidavits of Ed Jackowiak,
Jerry Reyling, Jay Sturm, and Allan Taylor. Jackowiak was the
sales executive based at Allerion's Illinois branch office who
was "directly responsible for the oversight and management of the
computer sale transaction" between Allerion and Nueva, "including
system design, product costings, system consolidation and
implementation, and customer questions."
 The contract was signed on behalf of Allerion by Jackowiak,
in Illinois, and by Nueva in Acapulco, "and both faxed to Ed
Jackowiak at Plaintiff's Illinois office, and sent via overnight
mail to the headquarters of Hyatt International, in Chicago,
Illinois -- and not sent to New Jersey". Jackowiak alleged that
this evidenced "that Mr. Shakalo and Mr. Bos were completely
apprised of the fact that the transaction in question was based
in the State of Illinois."
 "[W]ith the exception of the physical signing of the
contract in question, the performance of the contract was focused
almost entirely in the State of Illinois", that is, "[Jackowiak]
coordinated and oversaw the production, customization, and
shipment schedule of all of the contracted-for computer equipment
into Speed System International, Inc.'s Illinois-based warehouse,
the consolidation of said equipment in the Illinois-based
warehouse, and its ultimate shipment by Speed System
International, Inc. from Illinois to the duty-free warehouse in
Laredo Texas -- where it remained until the breach in question
occurred." Jackowiak also averred that "the parties to this
transaction were aware of the fact that Allerion, Inc.'s
Illinois-based international sales office would be performing the
computer sale transaction that is the core of this matter."
 Jackowiak also claimed to have "dealt extensively with both" 
Bos and Shakalo; to have "engaged in approximately twenty-five
(25) telephone conversations and several items of written
correspondence with Mr. Shakalo and Mr. Bos with regard to the
contract in question"; and that "throughout his numerous dealings
with Mr. Bos and Mr. Shakalo, they (Bos and Shakalo) knew to
direct all correspondence regarding the computer sale contract to
him (Ed Jackowiak) at Allerion, Inc.'s Illinois branch office".
The affidavit incorporated a "facsimile transmission, dated
February 15, 199[3], and sent to [Jackowiak] at Allerion, Inc.'s
Illinois office by Michel Bos" which "clearly discusse[d]
detailed elements of the contract". 
 The affidavits of Reyling, Sturm, and Taylor claimed that
each of them "worked closely" on the contract with Nueva, and
confirmed: "[t]hat a primary reason for locating the
international accounts office of Plaintiff, Allerion, Inc., in
Illinois [was] its proximity to the headquarters of Hyatt
International, the franchisor and management company of the
Acapulco-based hotel owned by Defendant [Nueva]"; that most of
the performance of the contract was to be "undertaken,
supervised, and overseen by the Illinois office of Plaintiff,
Allerion, Inc."; "that significant and sustained telephonic and
written communication has taken place between" Nueva and
Allerion's Illinois office; that "performance of the contract was
focused almost entirely in the State of Illinois"; that the
signed contract, sent to Allerion, in Illinois, and to Hyatt
International, in Illinois, evidenced Nueva's owner's knowledge
that the transaction in question was based in Illinois; and that
the direction to commence production and custom assembly, the
warehousing, and the consolidation of computer components were
all performed in Illinois. 
 The attachments to Allerion's reply indicate that: the
contract listed over 200 items of computer equipment,
peripherals, and accessories, and the prices charged therefor,
and bears the signature of the Director of Nueva; the contract
provided that the 30% downpayment would be made in U.S. dollars
to [Allerion], and the remaining payments would be "held with Mr.
Stoga of Hyatt International, until such time [Allerion] meets
the terms of the Agreement"; the contract's choice of law
provision indicated that New Jersey law would govern; Hyatt
International sent a letter to Joe Shakalo, in Mexico, indicating
that a representative of Hyatt International went to Mexico to
discuss the computer system, and that all the agreements were
being sent to him in Mexico for his signature; and Michel Bos of
Hyatt Acapulco sent a letter dated February 15, 1993, to Mr.
Jackowiak which sought clarification of items contained on an
invoice and referred to items "ordered according to contract 1-
28-93".
 Nueva's response to Allerion's reply contained another
affidavit by Juan Rodriguez, in which he indicated that Nueva
entered into a "Management Technical Assistance Agreement" with
Hoteles Exelaris, the predecessor of Hyatt Mexico, but that it
had never entered into any such agreement with Hyatt
International Corporation, nor had it ever requested or
authorized Hyatt International Corporation to deal on its behalf
with Allerion "with respect to the development of the purported
Agreement to purchase a Maxial computer system."
 He further claimed that: "The records of Nueva Icacos and
communications with Michel Bos, show that Nueva Icacos never
understood that any part of the purported Agreement . . . would,
or would need to be, completed in Illinois. Nueva Icacos
understood at all times relevant to the claims of Allerion, Inc.,
that virtually all hardware components to be supplied under the
purported Agreement would be brought to Mexico from the United
Kingdom. Nueva Icacos had no knowledge at any time before
January 28, 1993, how [Allerion] would assemble and ship to
Mexico the hardware components to be supplied under the purported
Agreement, nor whether Illinois residents would be used for this
purpose." 
 At the hearing on its objection, Nueva: denied that Hyatt
International had acted as its agent; claimed that Allerion
actively solicited the business of Hyatt International; and
stated that only after Allerion and Hyatt negotiated for over a
year, was a proposal sent to Nueva in Mexico. Allerion focused
on the precontractual negotiations in the form of the telephone
conversations and written correspondence alluded to above. 
 On July 5, 1994, the trial judge ruled that Allerion's
affidavits were sufficient under S. Ct. Rule 191, Nueva having
made objection thereto, and denied Nueva's objection to the
Illinois court's exercise of in personam jurisdiction over it. 
In making this ruling, he noted that Nueva executed a management
technical assistance agreement with Hoteles Exelaris, (currently
Hyatt Mexico), in which Hoteles (Hyatt Mexico) was granted
express authority to enter into contracts with third parties on
Nueva's behalf. He further observed that Hoteles (Hyatt Mexico)
was given "broad rights to operate the hotel including the
delegation of those rights to others", expressly referring to
Hyatt International. Based upon these provisions, the trial
court made the factual finding that Hyatt International "was in
fact the agent for [Nueva]".
 The court noted that "the whole purpose behind this whole
transaction is to get computers which are compatible between
Hyatt Hotels so that bookings for rooms can be booked"; "the
computer system in question here was Hyatt International's
recommendation to all of its hotels to standardize its computer
data bases; and that "[t]he maximal [sic] program recommended by
Hyatt [was] discussed with defendant's management." He found
that there were "numerous correspondence and transactions sent
between . . . the Hyatt International accounts office in Illinois
and the defendant about the hotel system in question", and ruled
that the computer transaction "create[d] jurisdiction in
Illinois", as "there [were] sufficient contacts with the State of
Illinois", and that the contacts between Nueva and Illinois were
"not a random and or fortuitous act, it [was] the whole substance
of the sale of the contract".
 Nueva filed a motion for reconsideration, attaching the
affidavit of Alexander J. Lee, the director of data processing of
Hyatt International Corporation. Lee averred that: Hyatt
International had no management services agreement or any
contractual relationship with Nueva; Nueva never requested or
authorized Hyatt International to deal with Allerion on its
behalf; Hyatt International never acted as an agent on Nueva's
behalf; and solicitations of computer hardware are made directly
to hotel owners, not through Hyatt International.
 He characterized his activities in connection with Nueva's
computer purchase as "providing technical consultant support to
Hyatt Mexico"; and claimed that "Hyatt International played no
role in the proposed sale". However, he also stated that: "by
and on behalf of Hyatt Mexico, [he] presented to Nueva Icacos a
proposal for the adoption of the Maxial computer system"; and
that: "On behalf of relevant local national management companies,
Hyatt International has in the past obtained from The Ultimate
Corp. [currently Allerion] computer system quotes that are sent
on to individual hotel owners. In these situations, the only
role of Hyatt International was to insure that the proper
configuration for the local hotel was provided and that the
correct number of peripherals was specified. Any recommendations
made with respect to the configuration were on behalf, and at the
request of the local national management companies."
 Nueva's motion to quash service was again denied on
September 30, 1994. This appeal followed. 

 Nueva's objection to Allerion's affidavits is based on its
assertion that they do not comply with Supreme Court Rule 191,
which mandates that such affidavits:
 "shall set forth with particularity the facts upon
 which the claim, counterclaim, or defense is based;
 shall have attached thereto sworn or certified copies
 of all papers upon which the affiant relies; shall not
 consist of conclusions but of facts admissible in
 evidence; and shall affirmatively show that the
 affiant, if sworn as a witness, can testify competently
 thereto." Supreme Court Rule 191(a), (145 Ill. 2d R.
 191).
 Nueva complains that Allerion's affidavits were deficient
because they failed to evidence the affiants' personal knowledge. 
Citing Canzoneri v. Franklin Park, 161 Ill. App. 3d 33, 37, 513
N.E.2d 1103 (1987) (affirming the trial court's order striking a
counteraffidavit where the court had no information from which it
could "make a reasonable inference that the affiant could
competently testify to the contents of the affidavit at trial"). 
However, affidavits will not be stricken for technical
deficiencies, for, where "it appears that an affidavit is based
on the personal knowledge of the affiant and a reasonable
inference is that the affiant could competently testify to the
contents of the affidavit at trial, there is no requirement that
the affiant specifically attest to these facts. [Citation.]" 
Hoover v. Crippen, 151 Ill. App. 3d 864, 868, 503 N.E.2d 848, 852
(1987), appeal denied, 119 Ill. 2d 557, 522 N.E.2d 1245 (1988).
 In this case, Allerion's affidavits show that each of the
four affiants were employed by Allerion and each claimed to have
been closely involved in the Nueva contract; accordingly, the
trial court could easily have inferred that the affiants
possessed personal knowledge and could competently testify to the
facts alleged in their affidavits as required by Supreme Court
Rule 191.
 Nueva also complains that the assertion that "significant
and sustained telephonic and written communication ha[d] taken
place" was completely devoid of any evidentiary foundation as to
"date, time, place, participants, initiator and subject matter."
 Although Jackowiak has failed to identify specific dates,
details of each conversation and who had initiated each call, his
assertion that he engaged in "25 telephone conversations and
several items of written correspondence with Mr. Shakalo and Mr.
Bos with regard to the contract in question", does indicate to
whom he communicated, the extent of their contacts, and that the
contract was the underlying subject matter on each occasion. We
also note that in response, Nueva has not denied either that the
indicated number of conversations were had or that the contract
was discussed on each occasion; nor has it denied having
initiated any significant portion of the calls. Accordingly, we
affirm the trial judge's ruling that these statements are
sufficient for the purposes of Rule 191. See Hoover v. Crippen,
151 Ill. App. 3d 864, 868, 503 N.E.2d 848, 852 (1987) (wherein
the court held that an affiant's failure to aver that the
contents of his affidavit were based upon personal knoweldge did
not render the affidavit improper), appeal denied, 119 Ill. 2d
557, 522 N.E.2d 1245 (1988).

 Nueva's remaining contention on appeal is that our courts
cannot exercise in personam jurisdiction over it under either the
United States Constitution or under Illinois Law. The Illinois
Long-Arm Statute provides that: "[a] court may also exercise
jurisdiction on any other basis now or hereafter permitted by the
Illinois Constitution and the Constitution of the United States." 
735 ILCS 5/2-209 (c). 
 In order to exercise in personam jurisdiction over a
defendant, the Due Process Clause of the Fourteenth Amendment
requires that the defendant have "minimum contacts" with the
forum State to the extent that maintenance of the suit there does
not offend "traditional notions of fair play and substantial
justice". International Shoe Co. v. Washington, 326 U.S. 310,
316, 90 L. Ed. 95, 66 S. Ct. 154, 158 (1945). 
 In analyzing the contacts between a defendant and the forum
state, "it is essential in each case that there be some act by
which the defendant purposefully avails itself of the privilege
of conducting activities within the forum State, thus invoking
the benefits and protections of its laws. [Citation.]" Hanson v.
Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228,
1239-40 (1958), reh'g denied, 358 U.S. 858, 3 L. Ed. 2d 92, 79 S.
Ct. 10. "The 'substantial connection' [citation] between the
defendant and the forum State necessary for a finding of minimum
contacts must come about by an action of the defendant
purposefully directed toward the forum State. [Citation.]" Asahi
Metal Industry Co., v. Superior Court of California, 480 U.S.
102, 112, 94 L. Ed. 2d 92, 107 S.Ct. 1026, 1032 (1987) (emphasis
in original).
 "In the area of contract law, Illinois courts have found
that a single business transaction can be sufficient to
constitute the 'minimum contacts' necessary to give a court in
personam jurisdiction over a non-resident defendant. [Citation.]" 
Capital Associates Development Corp. v. James E. Roberts-
Ohbayashi Corp., 138 Ill. App. 3d 1031, 487 N.E.2d 7, 11 (1985)
(indicating that "key factors include: who initiated the
transaction, where the contract was formed, and where
performance, or a major part thereof, was to be made"). In
Burger King Corp. v. Rudzewicz, the United States Supreme Court
held that:
 "If the question is whether an individual's
 contract with an out-of-state party alone can
 automatically establish sufficient minimum contacts in
 the other party's home forum, we believe the answer
 clearly is that it cannot. *** Instead, we have
 emphasized the need for a 'highly realistic' approach
 that recognizes that a 'contract' is 'ordinarily but an
 intermediate step serving to tie up prior business
 negotiations with future consequences which themselves
 are the real object of the business transaction.
 [Citation.] It is these factors -- prior negotiations
 and contemplated future consequences, along with the
 terms of the contract and the parties' actual course of
 dealing -- that must be evaluated in determining
 whether the defendant purposefully established minimum
 contacts within the forum." Burger King Corp. v.
 Rudzewicz, 471 U.S. 462, 478-79, 85 L. Ed. 2d 528, 105
 S. Ct. 2174, 2185 (1985).
 The due process clause permits personal jurisdiction to be
exercised over a defendant based upon acts of its agent. Damian
Services Corp. v. PLC Services, Inc., 763 F. Supp. 369, 372 (N.D.
Ill. 1991). Nueva maintains that Allerion has not furnished
sufficient facts to support the trial court's conclusion that
Hyatt International was acting as its agent in negotiating the
contract (citing Kutner v. De Massa, 96 Ill. App. 3d 243, 421
N.E.2d 231 (1981) (where this court held that plaintiff had
failed to make a prima facie showing that personal jurisdiction
existed because he failed to set forth any facts supporting his
conclusion that an agency relationship existed in response to the
defendant's express denial)). We disagree. 
 The record is clear that Hyatt International actively
negotiated with Allerion to provide Nueva with over 200
individually named and priced items of computer equipment,
accessories and peripherals which constituted the custom computer
system configuration required by Hyatt Mexico. Nueva's execution
of this detailed contract as negotiated by Hyatt International
leads irresistibly to the conclusion that Hyatt International was
negotiating on behalf of Nueva. We further note that the
contract provided that after Nueva made the initial downpayment,
the remaining contract payments were to be held by Hyatt
International until they were to be released to Allerion. 
 The trial court's finding was further supported by Hyatt
International's own affidavit wherein, as previously noted, Lee
stated that: "by and on behalf of Hyatt Mexico, [he] presented
to Nueva Icacos a proposal for the adoption of the Maxial
computer system"; and that: "On behalf of relevant local national
management companies, Hyatt International has in the past
obtained from The Ultimate Corp. [currently Allerion] computer
system quotes that are sent on to individual hotel owners. In
these situations, the only role of Hyatt International was to
insure that the proper configuration for the local hotel was
provided and that the correct number of peripherals was
specified. Any recommendations made with respect to the
configuration were on behalf, and at the request of the local
national management companies." (Emphasis added.)
 Although Hyatt International denies that it had acted as
Hyatt Mexico's agent, and characterizes its dealings with
Allerion as "providing technical consultant support to Hyatt
Mexico", we are not persuaded that the trial judge's finding that
Hyatt International acted as Hyatt Mexico's agent in negotiating
the contract was against the manifest weight of the evidence. 
Finnegan v. Les Pourviories Fortier, Inc., 205 Ill. App. 3d 17,
25, 562 N.E.2d 989 (1990). 
 In assessing the impact of the significant and ongoing
communications in which Nueva had engaged regarding the contract,
we note that in addition to the contract negotiations and
telephone communications, Allerion executed the contract in
Illinois, and that after Nueva signed the contract, it faxed one
copy to Allerion's Illinois office and sent another copy to Hyatt
International in Illinois. In addition, a February 1993
communication referring to the contract was sent to Allerion in
Illinois, the initial downpayment for the purchase of the
equipment was to be made to Allerion in Illinois, and the
remaining contract payments were to be held by Hyatt
International in Illinois, and eventually released to Allerion's
Illinois office.
 Moreover, the following elements of performance occurred in
Illinois: "[Jackowiak] coordinated and oversaw the production,
customization, and shipment schedule of all of the contracted-for
computer equipment into Speed System International, Inc.'s
Illinois-based warehouse, the consolidation of said equipment in
the Illinois-based warehouse, and its ultimate shipment by Speed
System International, Inc. from Illinois to the duty-free
warehouse in Laredo Texas". The affidavits of Reyling, Sturm and
Taylor indicate that at least these three other Illinois-based
Allerion employees also worked in connection with the contract. 
 Accordingly, we agree with the trial judge's conclusion that
Nueva has had the requisite "minimum contacts" with the state of
Illinois. See G.M. Signs, Inc. v. Kirn Signs, Inc., 231 Ill.
App. 3d 339, 596 N.E.2d 212 (1992) (wherein "the affidavits and
pleadings establish[ed] that defendant actively initiated and
negotiated an ongoing commercial relationship with plaintiff, an
Illinois seller"); Capital Associates Development Corp. v. James
E. Roberts-Ohbayashi Corp., 138 Ill. App. 3d 1031, 487 N.E.2d 7
(1985) (finding defendant had minimum contacts with Illinois
where payment under the contract took place from an office
located in Illinois, numerous letters were sent to plaintiff's
Illinois office, defendant "initiated negotiations with an entity
it knew to be an Illinois resident", that it voluntarily entered
into a contract with an Illinois resident, and it was aware that
performance would flow from Illinois); Empress International,
Ltd., v. Riverside Seafoods, Inc., 112 Ill. App. 3d 149, 445
N.E.2d 371 374 (1983) (finding that defendant had minimum
contacts with Illinois where it "voluntarily entered into a
business transaction with an entity he knew, or should have
known, was an Illinois resident", the contract was formed in
Illinois, the order for goods was received in Illinois and
shipped from Illinois, the goods were stored in Illinois prior to
shipment, and "at least some paperwork was completed" in
Illinois).
 "Once it has been decided that a defendant purposefully
established minimum contacts within the forum State, these
contacts may be considered in light of other factors to determine
whether the assertion of personal jurisdiction would comport with
'fair play and substantial justice.'" Burger King, 471 U.S. at
476, 105 S. Ct. at 2184 (citing International Shoe, 326 U.S. at
320, 66 S. Ct. at 160). In cases involving an alien defendant,
the relevant factors include: "the burden on the defendant, the
interests of the forum State, and the plaintiff's interest in
obtaining relief, * * * [and] the procedural and substantive
policies of other nations whose interests are affected by the
assertion of jurisdiction." Asahi, 480 U.S. at 113-15, 107 S.
Ct. at 1033-34. 
 "The unique burdens placed upon one who must defend oneself
in a foreign legal system should have significant weight in
assessing the reasonableness of stretching the long arm of
personal jurisdiction over national borders." Asahi, 480 U.S. at
114, 107 S. Ct. at 1033. "In every case, [the interests of other
nations], as well as the Federal interest in Government's foreign
relations policies, will be best served by a careful inquiry into
the reasonableness of the assertion of jurisdiction in the
particular case, and an unwillingness to find the serious burdens
on an alien defendant outweighed by minimal interests on the part
of the plaintiff or the forum State. 'Great care and reserve
should be exercised when extending our notions of personal
jurisdiction into the international field.'" Asahi, 480 U.S. at
115, 107 S. Ct. at 1034.
 Nueva has reached into the State of Illinois, negotiated
through its agent, and entered into a detailed contract with a
company doing business in Illinois. It engaged in ongoing
communications with the Illinois-based seller, and the contract
required partial performance within the State of Illinois. 
 We believe that to deny companies doing business in Illinois
the use of Illinois courts to pursue their rights under contracts
entered into under the circumstances present in this case would
negatively impact Illinois commerce. Autotech Controls Corp. v.
K.J. Electric Corp., 256 Ill. App. 3d 721, 628 N.E.2d 990, 996
(1993) (stating "to bar Illinois companies who have contracted
with non-resident corporations to sell goods manufactured in
Illinois, from vindicating their rights by suing such
corporations in Illinois courts . . . would have catastrophic
implications for Illinois commerce") Accordingly, for all the
foregoing reasons, we agree with the trial judge's conclusion
that Nueva should be required to defend this breach of contract
action in Illinois. 
 We hold that exercising in personam jurisdiction over Nueva
is also permissible under the Illinois Constitution, the due
process guarantee of which requires that "[j]urisdiction is to be
asserted only when it is fair, just, and reasonable to require a
non-resident defendant to defend an action in Illinois,
considering the quality and nature of the defendant's acts which
occur in Illinois or which affect interests located in Illinois.
[Citation.]" Rollins v. Ellwood, 141 Ill. 2d 244, 565 N.E.2d
1302, 1316 (1990).
 Nueva relies on Chalek v. Klein, where the court made a
distinction between active and passive purchasers, and claims
that it cannot be subjected to Illinois jurisdiction "merely
because they have entered into a contract with an Illinois
resident". See Chalek v. Klein, 193 Ill. App. 3d 767, 773, 550
N.E.2d 645 (1990). Chalek explains that "[d]istinguishing
between active and passive purchasers therefore protects the
ordinary mail order consumer who merely orders an item of
merchandise from a company in a distant State from having to
submit to the jurisdiction of the courts of that State while at
the same time it protects sellers who manufacture custom-built
products according to a nonresident buyer's specifications.
[Citation.]" Chalek v. Klein, 193 Ill. App. 3d 767, 773, 550
N.E.2d 645 (1990).
 Here, Nueva negotiated the computer purchase contract
through its Illinois-based agent for equipment which meets the
specific compatibility needs of Hyatt hotels. Additionally,
Allerion has alleged that Nueva itself engaged in substantial
communications with it in connection with the contract. Nueva's
involvement in this transaction is far from that of a "mail order
consumer." Accordingly, we conclude that it is not unfair to
bring Nueva "into an Illinois court to enforce the obligations
[it] knowingly undertook." See G.M Signs, Inc. v. Kirn Signs,
Inc., 231 Ill. App. 3d 339, 596 N.E.2d 212, 214 (1992).
 Therefore, for all of the foregoing reasons, the judgment of
the circuit court is affirmed.
 Affirmed.
DiVito, J., and Burke, J., concur.