MURDOCK, Justice
(dissenting).
I respectfully dissent. Although my vote is consistent with the outcome achieved by the trial court, I find it necessary first to address briefly my disagreement with the trial court as to a procedural matter. I thereafter address the merits of the personal-jurisdiction issue.
*815 A. The Trial Court’s Treatment of No. 1 Steel’s Motion as Summary-Judgment Motion
I cannot agree with the trial court’s treatment of the motion filed by No. 1 Steel Products, Inc., as a motion for a summary judgment. The motion was one for dismissal for lack of personal jurisdiction over the defendant, a ground cognizable under Rule 12(b)(2), Ala. R. Civ. P. Rule 12(b) makes it proper to treat a motion filed under Rule 12(b)(6) (“for failure to state a claim” cognizable under Alabama law) as a motion for a summary judgment if matters outside the pleadings are presented to and are not excluded by the court; this treatment does not apply to motions seeking dismissal of an action for lack of personal jurisdiction.
In evaluating a motion for a summary judgment, it is not the trial court’s task to decide facts, but instead merely to determine whether any genuine issue of material fact remains for decision in a trial. In contrast, the task of the trial court in evaluating a motion to dismiss for lack of personal jurisdiction is to make actual findings of fact regarding “contacts” and other matters as necessary to a pretrial disposition by the court of the question whether the defendant is properly before that court.[5]
B. Personal Jurisdiction
“It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis S.W.R. Co. v. Alexander, 227 U.S. [218,] 228 [ (1913) ]; International Harvester Co. v. Kentucky, 284 U.S. [579,] [ (1914) ]. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.”
International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (emphasis added).
Consistent with these principles, I agree with the main opinion that the “mechanical” issue of who contacted whom first should not be dispositive, especially in the context of facts such as those presented here.
These same principles, however, bring into question the notion, admittedly found in cases relied upon in the main opinion, that a one-time contractual purchase of goods by an out-of-state purchaser from an Alabama manufacturer cannot be an appropriate basis for the exercise of in per-sonam jurisdiction over the out-of-state purchaser, whereas the occurrence of such a purchase more than once can be. Logically, if a given transaction is not possessed of the intrinsic qualities necessary to justify the exercise of in personam jurisdiction over the out-of-state party, why would it matter that the same type of transaction is repeated? Does not such an approach implicate the “quantitative” or “little-more-or-little-less” criteria eschewed *816 by the United States Supreme Court in International Shoe?[6]
The Court in International Shoe stated that what matters is “the quality and nature of the activity.” 326 U.S. at 319. As the Supreme Court has further explained as to contract disputes in particular (as opposed to produets-liability cases, in which the jurisprudence has of necessity focused largely on preventing the exercise of jurisdiction based on merely “fortuitous” contacts):
“If the question is whether an individual’s contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party’s home forum, we believe the answer clearly is that it cannot.... Instead, we have emphasized the need for a ‘highly realistic’ approach that recognizes that a ‘contract’ is ‘ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.’ ... It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties’ actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.”
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (final emphasis added).
What appears to matter then is not that the parties are engaged in a contractual transaction that might not be repeated, but the nature and quality of that transaction, including the nature and location of the obligations assumed, the performance induced thereby, and the contemplated nature and location of the consequences of any default thereunder. This has been the reasoning of a number of decisions where courts have exercised personal jurisdiction over out-of-state defendants based on a one-time purchase of goods or materials or other one-time contract. See, e.g., Ex parte Lord & Son Constr., Inc., 548 So.2d 456 (Ala.1989) (affirming a trial court’s exercise of personal jurisdiction over a Florida defendant on the basis of the Florida defendant’s commitment to sénd payments to an Alabama supplier for materials purchased for a construction project in Florida).[7]
*817 The present case involves the alleged breach by No. 1 Steel of a contractual undertaking by it to make a substantial payment to Garrison Steel Fabricators, Inc., an Alabama corporation with its principal place of business in this State. The contract is one by which No. 1 Steel caused Garrison to exert considerable time and effort specially fabricating steel product of substantial value at Garrison’s plant in Alabama, the fabrication of which was accomplished pursuant to significant interaction with and instruction by No. 1 Steel over the course of a working relationship that lasted almost a year.[8] Given this set of facts, I find particularly helpful the review of cases from various jurisdictions conducted by the Supreme Court of Tennessee in Nicholstone Book Bindery, Inc. v. Chelsea House Publishers, 621 S.W.2d 560 (Tenn.1981):
“[Darby v. Superior Supply Co., 458 S.W.2d 423 (Tenn.1970),] involved the purchase of mahogany lumber by an Alabama individual, from the plaintiff, a Tennessee supply firm in Chattanooga. The order was placed by telephone and the plaintiff filled the order from available stock.... Darby later refused to pay for the lumber and Superior sued for payment due. The Darby majority seemed to be impressed by the following factors in finding a failure of jurisdiction: (1) that the defendant, an individual, entered the forum state only through his servant, the driver of the truck which hauled the lumber away; (2) that the transaction was a retail purchase by an individual involving only the ‘modest amount’, of $3,639.18; and (3) that filling defendant’s order required ‘no special manufacturing operations in Tennessee.’ Id. at 426.
“It should be noted that one of the ingredients of jurisdiction missing in Darby, the presence of a ‘special manufacturing operation,’ is found in this case. These custom-made bindings and casings were not simply taken from stock, as was the lumber in Darby. This point is considered in Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27 (8th Cir.1973), where jurisdiction was permitted to reach into Illinois from Arkansas. Involved was defendant’s contract to fabricate certain customized items for the construction of a bridge in Arkansas by plaintiffs. The court found an important ‘contact’ in that the forum state was the place of performance of a customized contract. Id. at 32
*818 “It is an understatement to say that there are numerous cases discussing in personam jurisdiction in the setting of a single business transaction. In Lakeside Bridge & Steel v. Mountain State Const. Co., 597 F.2d 596 [ (1979) ], cert. denied 445 U.S. 907 ... (1980), Justice White, dissenting from the denial of a writ of certiorari, noted that ‘the question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plaintiff has deeply divided the federal and state courts.’ He regrets that the Supreme Court refused to offer any clear guidance on this important problem.
“One, however, finds support for our current position in a vast array of sources. In Colony Press Inc. v. Flee-man, 17 Ill.App.3d 14, 308 N.E.2d 78 (1974) an Ohio corporate defendant, by placing a single interstate telephone order, satisfied the ‘minimum contact’ requirements of the due process clause because the defendant voluntarily entered into a business transaction with an Illinois plaintiff. In Product Pro-mot[ions], Inc. v. Cousteau, 495 F.2d 483, 494-499 (5th Cir.1974), a breach of contract suit in which the court held that minimum contacts were sufficient, the court reasoned that neither the defendant nor the defendant’s agents need be physically present within the state so long as the defendant’s contact with the forum was deliberate and not fortuitous. See also, Good Hope Industries v. Ryder Scott Co., [389 N.E.2d 76 (Mass.1979) ]; cf. World-Wide Volkswagen [Corp. v. Woodson, 444 U.S. 286 (1980)].... The Wisconsin Supreme Court in Zerbel v. H.L. Federman & Co., 48 Wis.2d 54, 179 N.W.2d 872 (1970) held that when a non-resident defendant contracted for services, i.e. the preparation of a financial report, which would be performed in part in Wisconsin, the defendant purposefully availed himself of the privilege of conducting activities in Wisconsin.
“Proctor & Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa.Super. 12, 323 A.2d 11 (1974) seems closely analogous to the instant case. A Pennsylvania corporate seller brought suit against a Georgia corporate buyer to recover the balance due on the purchase price of specially ordered lumber drying equipment and related materials. Alleging certain defects in the manufacture of the goods purchased, the defendant refused to make further payments.... In examining the nature of defendant’s conduct, the court noted that it was not a passive purchaser which blandly submitted to the mandates of a foreign seller. Rather the defendant conducted extensive and active negotiations with the plaintiff. Relying upon In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 233 (6th Cir.1972) the court stated that ‘(t)o the extent the buyer vigorously negotiates ... and ... departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears.’ The defendant should reasonably have anticipated that a failure to make the installment payments on its obligation would have consequences within the forum state and could result in its being called to defend itself in the state whose laws governed the contract.
“William W. Bond, Jr. & A., Inc. v. Montego Bay Dev. Corp., [405 F.Supp. 256 (W.D.Tenn.1975) ], is persuasive on the facts. In Bond, the plaintiff, a Tennessee corporation, entered into a contract with a Maryland corporation to prepare architectural, mechanical, electrical, and structural plans for a Holiday *819 Tnn to be built in Maryland. Defendant solicited the job. The contract was executed in Maryland. Applying the Mo-hasco [9] test, the court found that defendant had purposely availed itself of the privilege of doing business in Tennessee because it was ‘necessarily foreseeable to the parties that at least a substantial part of the services plaintiff was to provide would be performed ... in Tennessee.’ Id., 405 F.Supp. at 259. Citing Mohasco, the court noted that it was not controlling that no representative of defendant ever came to Tennessee in connection with the deal. Id. It summarized:
“ ‘Here, a business transaction set in motion by defendants had a realistic, foreseeable and considerable impact on commerce in Tennessee. Id.’
“... [Finally, the court found that it would be reasonable to require [the] defendant to defend in Tennessee:
“ ‘The interest of Tennessee here is to resolve a contract dispute brought by a resident to recover the alleged benefit of his bargain. Even a one-shot contract, if substantial enough in its effect on Tennessee commerce, appears to be a potentially sufficient contact with the forum state under Sixth Circuit standards.’ 405 F.Supp. 260.”
621 S.W.2d at 562-66.
The United States Supreme Court stated in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980):
“The protection against inconvenient litigation is typically described in terms of ‘reasonableness’ or fairness.’ We have said that the defendant’s contacts with the forum State must be such that maintenance of the suit ‘does not offend “traditional notions of fair play and substantial justice.’” International Shoe Co. v. Washington, [826 U.S. 310,] at 316 [ (1945) ], quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940). The relationship between the defendant and the forum must be such that it is ‘reasonable ... to require the corporation to defend the particular suit which is brought there.’ 326 U.S., at 317. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State’s interest in adjudicating the dispute, see McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957); the plaintiffs interest in obtaining convenient and effective relief, see Kullco v. California Superior Court, ... 436 U.S. [84], at 92 [ (1978) ]; the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see Kulko v. California Superior Court, supra, 436 U.S., at 93, 98.”
444 U.S. at 292 (emphasis added).
“The Due Process Clause protects an individual’s liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful ‘contacts, ties, or relations.’ International Shoe Co. v. Washington, 326 U.S. [310], at 319 [(1945)]. By requiring that individuals have ‘fair *820 warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,’ Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment), the Due Process Clause ‘gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,’ World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).”
Burger King Corp., 471 U.S. at 471-72 (footnote omitted).
Given the nature and quality of the transaction in this case, I cannot conclude that it “offends traditional notions of fair play and substantial justice” to require No. 1 Steel to defend the present action in Alabama.
PARKER, J., concurs.

. Except to the extent we must take into consideration a trial court’s factual findings based on evidence received ore tenus, which is not the case here, our appellate review of a trial court’s ruling on a motion to dismiss for lack of in personam jurisdiction is de novo. See generally Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002).

. See Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 385 (6th Cir.1968) (holding that the "interest of the State cannot be measured by 'a little more or a little less,’ International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945); it is not diminished simply because only one contract is relied upon as the basis of jurisdiction”).

. See also, e.g., Capital Assocs. Dev. Coip. v. James E. Roberts-Ohbayashi Corp., 138 Ill. App.3d 1031, 1037, 487 N.E.2d 7, 12, 93 Ill.Dec. 563, 568 (1985) (where, among other things, the defendant "initiated negotiations with an entity it knew to be an Illinois resident,” it voluntarily entered into a contract with an Illinois resident, and it was aware that performance would flow from Illinois); Empress Int’l, Ltd. v. Riverside Seafoods, Inc., 112 Ill.App.3d 149, 154, 445 N.E.2d 371, 374, 67 Ill.Dec. 891, 894 (1983) (to like effect); Acquadro v. Bergeron 851 So.2d 665, 677 (Fla. 2003) (Wells, J., dissenting) (citing authority for the proposition that the assertion of “in personam jurisdiction based on a single, isolated transaction by the nonresident defendant does not necessarily offend due process " and that "[t]he analysis must focus on the nature of the act": “When dealing with isolated acts of a defendant, rather than centering on continuous economic activity within the state, a key focus is the quality and nature of the interstate transaction." (some emphasis added)).
In the seminal Sixth Circuit case regarding the exercise of personal jurisdiction consistent with due-process requirements, Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir.1968), the court synthesized the rules announced in International *817 Shoe and subsequent Supreme Court decisions into a "three-part test” as to the presence of "minimum contacts” based on a “single act”:
"[T]hree criteria emerge for determining the present outer limits of in personam jurisdiction based on a single act. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.”
(Emphasis added.) Cf. Andalusia Distrib. Co. v. Singer Hardware Co., 822 So.2d 1180, 1184 (Ala.2001) (identifying as a factor in an ongoing relationship the fact that "any default in [the nonresident’s] payment to [the Alabama corporation] would create hardship [for the Alabama corporation]”).

. Compare Corporate Waste Alts., Inc. v. Cumberland, Inc., 896 So.2d 410 (Ala.2004) (upholding jurisdiction over a nonresident defendant based on 18 months of communications and payments to a plaintiff in Alabama, notwithstanding the fact that the location of the work performed by the plaintiff was outside Alabama).

. Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 385 (6th Cir.1968); see supra note 6.